[Central of Georgia Railway Company v. Barnett.] .

# Central of Georgia Railway Company v. Barnett.

*Damages for Injury to Stock..*

(Decided June 13, 1907. 44 South. 392.)

1. *Evidence; Opinion; Value.*—A witness cannot give his opinion as to the quantum of damages sustained by an animal being struck by a train; he may state the value of the animal before and after the striking, and if the animal is killed he may state its value.

2. *Railroads; Injury at Crossing; Care Required.*—A person must stop, look and listen for approaching trains before he attempts to cross and his stop and survey by sight and sound must precede his effort to cross in point of time so as to preclude the danger from approaching trains between the time of his stop and attempt to cross.

3. *Same; Contributory Negligence.*—Where there was nothing to prevent a person stopping on approaching a railroad crossing and nothing to prevent his seeing or hearing the train had he stopped, he was guilty of contributory negligence as a matter of law, although he stopped 125 yards from the crossing and did not hear the train, and then drove on to the crossing without again stopping.

APPEAL from Coosa Circuit Court.

Heard before Hon. S. L. BREWER.

Action by Fred Barnett against the Central of Georgia Railway Company. From a judgment for plaintiff, defendant appeals. Reversed.

This was an action for damages alleged to have been caused by a collision between a wagon and mules of plaintiff and a train of cars operated over defendant's line of railway. The facts tended to show that the plaintiff was driving along the road which crosses the track of appellant near Parkdale, in Coosa county. The train was going east towards Goodwater, and was a construction train. From the side track, where the train was first seen by the driver of the team, back to the railroad crossing at Parkdale, is about 620 yards. The house where plaintiff lived is about 360 yards from the same crossing. It was shown further that plaintiff saw the train about the time his team left home, or about 360 yards from where it was struck. It is also shown that the driver of the team stopped at a house about 125 yards from the railroad crossing, and looked and listened for the train, and saw no train from that point. It is further shown that the driver of the team made no other stop, and paid no special attention to see if the train was approaching after his stop at Swindle's house, about 125 yards from the crossing. The pleas were contributory negligence for failure to stop, look, and listen.

GEORGE P. HARRISON, for appellant.—A witness cannot give his opinion as to the amount of damages sustained by his mule being struck.—*Central of Ga. Ry. Co. v. Keyton,* 41 South. 919; *Krebs Co. v. Brown,* 108 Ala. 510; *Young v. Cureton,* 87 Ala. 726. A person who fails to stop, look and listen when approaching a railroad crossing is, as a matter of law, guilty of contributory negligence.—*C. of Ga. Ry. Co. v. Foshee,* 125 Ala. 199; *H. A. & B. R. R. Co. v. Sampson,* 91 Ala. 560;

*G. P. R. R. Co. v. Lee,* 92 Ala. 262; *H. A. & B. R. R. Co. v. Fennell,* 111 Ala. 366; *N. P. R. R. Co. v. Freeman,* 174 U. S. 379. This duty must be performed while the person is so near the track and so immediately preceding his effort to cross over the track as to remove any danger from trains approaching the crossing, between the time he stopped, looked and listened, and his attempt to proceed across the track.—*C. of Ga. Ry. Co. v. Foshee, supra; Shatto v. Erie R. R. Co.,* 121 Fed. 678. When contributory negligence is plainly shown and there is no evidence of willfulness and wantonness, there is nothing to submit to the jury.—*H. A. & B. R. R. Co. v. Fennell, supra; McAdory v. L. & N. R. R. Co.,* 109 Ala. 636; *Pannell v. Railroad Co.,* 97 Ala. 298.

GEORGE A. SORRELL, for appellee.—Counsel discusses assignments of error, and authorities in support thereof in appellant's brief but cites no authority to sustain his contentions.

ANDERSON, J.—The rule of evidence in permitting witnesses to give their opinion as to the value of property does not extend the right to testify as to the quantum of damages sustained. They can state the injuries, and even the value before and after the injury, and the damage would ordinarily be the difference; but it seems, from the weight of authority, that the jury, and not the witness, should ascertain the quantum of damages suffered.—*Montgomery & West Point R. R. v. Varner,* 19 Ala. 185; *Chandler v. Bush,* 84 Ala. 102, 4 South. 207; *Krebs v. Brown,* 108 Ala. 510, 18 South. 659, 54 Am. St. Rep. 188; *Young v. Cureton,* 87 Ala. 727, 6 South. 352. It is true the evidence in the case of *Krebs v. Brown, supra,* was sanctioned by the court, because the witness stated that the destruction of the goods was

total, and, as the damage was the value of the goods, the witness could testify as to the value and therefore the damage. The rule to which we adhere was laid down in the case of *Montgomery & West Point R. R. v. Varner. supra,* which has been frequently cited and approved, and is supported by some of the early text-writers, but does not meet with the approval of Mr. Wigmore in his valuable book on Evidence (section 1942); but he admits the weight of authority to be in favor of the rule of the court. The test generally of the damages is the difference in the value of the property before and after the injury, and to which facts a nonexpert witness may testify; and it looks rather technical to hold that he should not be permitted to make the mathecatical subtraction and testify to the damage sustained, yet it might be that the witness, in fixing the value of the damages, would not do so on the legal basis of the difference in the value before and after the injury, and the safer rule is for him to detail the facts tending to deteriorate the value of the property and let the jury fix the quantum of damages. The trial court erred in permitting the plaintiff to testify as to the amount of damage done the injured mule and the wagon and harness; but, as one mule was killed, he could give his opinion, as he testified to its value, and there was a total destruction, and the damage was the value of the mule.

"That it is the duty of a person approaching the track of a railway for the purpose of crossing it to stop, and to look, and to listen, if need be—that is, if the exercise of the sense of sight does not suffice to fully disclose the situation for approaching trains—and that the omission of this duty, followed by injury in collision with a train, locomotive, or car while attempting thus heedlessly to cross over the track, is as matter of law negligence on the part of the traveler so contributing to the result as

to defeat his action, counting on the injury as having been produced by the simple negligence of the railway company or its employes, are propositions of such universal acceptance, of such frequent declaration by this court, and of such obvious soundness that we shall neither discuss them nor cite authorities in support of them. It is equally clear on principle and authority that this duty must be performed at such time and place with reference to the particular situation in each case as will enable the traveler to accomplish the purpose the law has in view in its imposition upon him. He must stop so near to the track, and his survey by sight and sound must so immediately precede his effort to cross over it, as to preclude the injection of an element of danger from approaching trains into the situation between the time he stopped, looked, and listened and his attempt to proceed across the track. If he stops so far from the railway as that a train which could not be seen from that point could and does reach the crossing by the time he has traversed the intervening distance and gotten on the track, he negligently contributes to the resulting collision and injury. And the same is true if, though he stop at the track, he lingers there after looking and listening, and delays crossing until a train not in sight or hearing when he stopped, looked, and listened has come meantime upon the scene and collides with him when he does attempt to cross."—*Central of Georgia Ry. Co. v. Foshee*, 125 Ala. 212, 27 South. 1006. Applying these principles, we think it clear that the stopping of the driver at the house 125 steps from the crossing did not relieve him from stopping at some point nearer the crossing. It might be that he did not see or hear the train when he stopped, yet he could have seen, or at least heard, it if he had stopped at or very near the crossing. Indeed, the evidence shows that the

train struck the mules as soon as they reached the track, and if the driver had stopped just for a moment, for the purpose of listening, whether he could have seen up the track or not, the train would have closed the road, and the collision would have been avoided; and there can be no doubt but what the driver's failure to stop at some point near the track, and just before driving thereon, contributed proximately to the injury.

These views are not in conflict with the holding of a majority of the court in *Central of Ga. R. R.. v. Hyatt,* 151 Ala. —, 43 South. 867. In that case there was evidence that the horse was running away, and from which the jury could infer that the intestate could not stop. Moreover, there was evidence from which the jury could infer that he could not have seen or head the train, had he stopped, as the rear train was making a greater noise, and it was dark, and there was evidence that the front engine was not lighted, and it was therefore a question for the jury to determine whether or not it was his duty to stop, and whether or not his failure to do so so contributed proximately to his death. In the case at bar there was nothing to prevent the driver from stopping, and, had he stopped, he evidently could have seen and heard the train; for with a moment's delay on his part the train would have rushed in sight before his team reached the railroad track.

The trial court erred in refusing the affirmative charge requested by the defendant.

TYSON, C. J., and DOWDELL and McCLELLAN, JJ., concur.