# Tennessee Coal, Iron & Railroad Co. v. McMillion.

*Damages to Land and Stream by Pollution of Water.*

(Decided May 24, 1909.  49 South. 880.)

1. *Water and Water Courses; Pollution of Stream; Damages; Instruction.*—Where the complaint claimed damages of a permanent character to land resulting from a deposit thereon caused by the pollution of a stream, a charge asserting that the mere fact that the waters of the stream were polluted by the defendant, would not give plaintiff a cause of action unless the purity of the water was greatly impaired as the result thereof, confined plaintiff's right of recovery to a mere pollution of the water, to the extent of impairing its purity, and it was properly refused.

2. *Same; Injury to Land; Evidence.*—Where the evidence tended to show that the deposit caused by the pollution of the stream had the effect of forming clods in the land when plowed, it was competent to show the existence and the size of the clod as a circumstance to be considered in determining if the agricultural value of the land had been affected thereby.

[Tennessee Coal, Iron & Railroad Co. v. McMillion.]

3. *Evidence; Opinion Evidence; Value of Land.*—Whether expert in land value or not, a witness may testify as to the extent of injury to land, and if acquainted with the land, may testify as to its value, before and after the injury, but they cannot fix the quantum of damages suffered, that being a jury question.

4. *Same.*—The fact that a witness had in mind a hundred acres of land instead of fifty, when testifying as to the value of the land per acre, would not affect the value of the testimony.

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES A. SENN.

Action by William E. McMillion against the Tennessee Coal, Iron & Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The facts sufficiently appear in the opinion. The following charge was refused to the defendant: "The mere fact that the waters of Valley creek were to some extent polluted by the operation along it of defendant's industries would not give plaintiff any cause of action against defendant, unless the purity of the waters of said stream were greatly impaired as the result of said operation."

PERCY & BENNERS, for appellant.—The court erred in sustaining the plaintiff's objection to the question of defendant to its witness Tate.—*Tutwiler C. C. & I. Co. v. Mitchell*, 39 South. 762. Notwithstanding plaintiff could recover only such damages as had been suffered within twelve months prior to the filing of his suit, evidence of the condition of the stream prior to the twelve month's period and subsequent to the commencement of the suit, was relevant and competent, for the purpose of showing the effect of the deposit, if any, on the land and in the river.—*Ala. C. C. & I. Co. v. Vines*, 44 South. 377. Charge 1 should have been given.—*T. C. I. & R. R. Co. v. Hamilton*, 100 Ala. 256. The court erred in allowing proof of the value of the land, in the manner here attempted.

[Tennessee Coal, Iron & Railroad Co. v. McMillion.]

FRANK S. WHITE & SONS, for appellee.—The courts will not grant new trials on the ground of the excessiveness of the verdict, unless a preponderance of the evidence against the verdict, is so decided as to convince the court that it was wrong or unjust.—*Cobb v. Malone,* 92 Ala. 632; *Jones v. Tucker,* 132 Ala. 307. It was competent to show the character of the land before and after the deposit, the curtailment or loss of crops proximately resulting from the deposit, and the value of the land before and after the injury.—*Tutwiler C. & C. Co. v. Nichols,* 39 South. 762; *Ala. C. C. & I. Co. v. Vines,* 151 Ala. 398. Damages may be recovered for permanent injury to the land.—*Drake v. Lady Ensley Co.,* 102 Ala. 501; *Ala. C. C. & I. Co. v. Vines, supra.* The court properly declined to give the charge requested.—4 Sutherlin on Damages, sec. 1047; *Ala. C. C. & I. Co. v. Vines, supra.* The court properly admitted Gwinn's evidence as to the value of the land.—*L. & N. v. Lischkoff,* 82 Ala. 263; *R. R. Co. v. Watson,* 90 Ala. 44; *R. R. Co. v. Moody,* 92 Ala. 279; 112 Ala. 337.

ANDERSON, J.—The complaint did not confine the claim for damages to a mere pollution of the water in "Valley creek," but set out damages of a permanent character to plaintiff's land, resulting from the formation of a crust or deposit on same, caused by the defendant in placing or permitting certain refuse or waste matter to get in the creek, and which was conveyed to and deposited on said land by rises and overflows of said creek.

Charge 1, requested by the defendant, was properly refused. If not otherwise bad, it confines the plaintiff's right to recover to a mere pollution of the water and to the extent of imparing its purity, when, under the pleading and evidence, the plaintiff was entitled to re-

cover for the deposits on the land, whether the placing of same in the creek did or did not impair the purity of the water.

The trial court did not err in refusing to let the witness Tate answer the question, "To what extent did the deposits that you saw affect its value, if at all?" This question called for the quantum of damages to the land, if any. It did not seek to ascertain only whether or not the land was damaged, but went further, and sought the extent to which the value was affected, with the hypothesis. Witnesses can detail the injuries, and state the value of the thing damaged before and after the injury; but the jury, and not the witnesses, must fix the quantum of damages suffered.—*C. of G. R. R. Co. v. Barnett,* 151 Ala. 407, 44 South. 392 (where this question is fully discussed.) Whether or not there is an exception, in this particular, as to experts, we need not decide, as Tate may have been an expert on land values in Jefferson county, yet it was not shown that he was an expert in determining the effect of deposits on the value of same, so as to supply his opinion for that of the jury in determining the extent of the injury to the value of the land. On the other hand, whether an expert or not, he could give the extent of the injury, and, if he knew the land, could testify what it was worth before and after the injury, but could not give the value of the injury, nor make the deductions for the jury. This rule, while followed by the court in the *Barnett case, supra,* was criticised by Mr. Wigmore; but it seems to be supported by the weight of authority and is stare decisis in Alabama.

The witness Gwinn and others were competent to testify as to the value of the land before and after the deposit, and it was for the jury to determine the extent or quantum of the damages. They did not have to be experts as to land values, and the only predicate required,

in order for them to testify as to the value of the land, was that they knew the land.—*Southern Railway Co. v. Morris,* 143 Ala. 631, 42 South. 17, and authorities there cited.

The fact that Rainey had in mind 100 acres, instead of 50 acres, when testifying, did not render his evidence valueless. He testified to the value of the land, not in bulk, but per acre; and the proportion fixed by him could have been applied by the jury to a reduced area, in the proportion that the injured land bears to the other part of the tract—that is, the injured and the uninjured land could have been scaled proportionately, so as to correspond with 50, instead of 100, acres.

There was no error in permitting the witnesses to give the size of the clods when the land was plowed, as the evidence tended to show that the deposit caused said clods, and the existence and the size of said clods was a circumstance to be considered by the jury in determining whether or not the agricultural value of the land was affected.

It is insisted that the verdict of the jury was excessive, and that the trial court should have granted the motion for a new trial upon this ground. There was much evidence from which the jury could find that the plaintiff sustained the damage assessed. True, it looks rather improbable that only a portion of a tract of land could be damaged to the extent of $600, with crop damage included, when the plaintiff only paid $380 for the entire tract a few years previous to the injury; yet there was evidence that the land was worth a great deal more that the plaintiff had cleared some of it since he bought it, and, so far as we know, he may have bought it very cheaply. Again, prices may have enhanced suddenly and considerably, which is not an uncommon thing in some localities. One of the defendant's witnesses testi-

fied that some of the bottom land was worth $100 per acre without the deposit.

The judgment of the city court is affirmed.

Affirmed.

DOWDELL, C. J., and McCLELLAN and SAYRE, JJ., concur.