[Crawford, et al. v. McMickens.]

# Crawford, *et al. v.* McMickens.

### *Suit by Wife for Injury to Husband.*

(Decided November 7, 1914. 66 South. 712.)

1. *Negligence; Acts Constituting; Complaint.*—A complaint which alleges that defendants carried a negro near plaintiff's house and negligently and wrongfully permitted him to assault her husband, and to use abusive, insulting and profane language in her presence as a proximate consequence of which assault plaintiff suffered mental and physical pain and anguish and nervous prostration, was frightened, etc., was demurrable in failing to allege facts showing the negligence of defendant, such allegations being merely conclusions.

2. *Same; Anticipating Consequences.*—Such a complaint was also defective in failing to allege that defendant knew of plaintiff's presence or any fact to show that they could have anticipated the fright or nervous shock to plaintiff or the consequences thereof; for while it is not necessary to allege a specific intention to cause mental distress or nervous shock, yet facts must be alleged from which it might reasonably be inferred that such consequences would result from the alleged wrongful act.

3. *Pleadings; Demurrer; Construction.*—Pleadings are always construed most strongly against the pleader when attacked by demurrer.

APPEAL from Bessemer City Court.

Heard before Hon. J. C. B. GWIN.

Transferred from Court of Appeals under the act creating said court.

Action by Ida McMicken against L. M. Crawford and others, for damages. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

BEN G. PERRY, and C. G. MIMS, for appellant.

MATHEWS & MATHEWS, for appellee.

MAYFIELD, J.—This is an unusual, if not an anomalous action. It is by the wife, to recover damages, not upon her, but upon her husband. Moreover, it is not claimed that the defendants, or either of them, assault-

ed the husband, nor that they aided or abetted another in assaulting him. The only charge against them is that they negligently and wrongfully permitted a negro prisoner, who was in their custody, to assault plaintiff's husband.

(1) The sole count on which the trial was had was count 3, which reads as follows: "Plaintiff claims of the defendant $1,000 as damages, for that heretofore, on or about, August 28, 1912, the defendants carried a negro to the house of the plaintiff, or near thereto, who was then and there a prisoner in charge of defendants, and negligently and wrongfully permitted said negro to assault the husband of the plaintiff in the presence of the plaintiff who was at the time in a delicate state of health, and as a proximate consequence of said assault, the plaintiff was greatly frightened and scared, was caused to suffer nervous prostration, made sick, suffered great mental and physical pain and anguish, her health and physical stamina were greatly and permanently impaired, and she was put to great trouble, inconvenience and expense for medicine, medical attention, and proper diet in and about her efforts to restore her health."

This count was subsequently amended by adding thereto the following: "And the defendants wrongfully permitted said prisoner to make use of abusive, insulting, profane, and obscene language in her presence and hearing."

It will be noticed that it is not alleged that the defendants were wrongfully on or near the plaintiff's premises, and that it is not alleged that either of the defendants caused, or attempted or intended, any harm to the plaintiff or to her property, nor even that the negro prisoner attempted or intended any wrong or injury to the plaintiff. The sole cause of action attempted

to be alleged is that the defendants negligently and wrongfully permitted the negro prisoner to assault her husband, and to use abusing, insulting, profane, and obscene language in her presence and hearing. There is no allegation that defendants or the prisoner knew of the presence of plaintiff when the alleged assault was attempted or the offensive language was used.

(2, 3) Construing the complaint most strongly against the pleader, it was clearly defective, and subject to the demurrer interposed. No facts are alleged which show a duty on the part of the defendants to prevent the prisoner from assaulting the husband of plaintiff; no facts are alleged which show that they had the power, means, or opportunity, to prevent such assault, or the use of the language attributed to the prisoner. The allegations in this respect are pure conclusions of the pleader. The cause of action being based solely on negligence, the complaint must allege facts to show a duty owed by the defendants to the plaintiff, and a breach thereof. While it is alleged that the defendants negligently permitted the prisoner to assault plaintiff's husband, no facts are alleged to show that the defendants could have anticipated the fright or nervous shock to the plaintiff, or the consequences of such fright. It is not show that they knew of her presence, of even of her existence. While a specific intention to cause the mental distress or nervous shock is not necessary to be alleged, facts must be alleged from which it may be reasonably inferred that such consequences would result from the wrongful act. The negligence may be so gross and reckless as to show utter indifference to consequences.

It was said by the Supreme Court of Massachusetts, per Holmes, C. J.: "If a nervous shock was due to causes for which the defendant was not answerable,

such as the behavior of a drunken man whom it was
engaged in removing, it could not be held for the shock,
notwithstanding its liability for a battery happening
at the same time."—*Homans v. Boston Elevated Ry.
Co.,* 180 Mass. 456, 62 N. E. 737, 57 L. R. A. 291, 292,
91 Am. St. Rep. 324.

Mr. Sutherland, in his work on Damages (volume
1, p. 72), says: "The shock, in order to give a cause of
action, must be one which arises from a reasonable fear
of immediate personal injuries to the plaintiff. This
limitation was applied by Bruce and Wright, JJ., in
the unreported case of *Smith v. Johnson & Co.,* where
a man was killed negligently by the defendant in the
sight of the plaintiff, and the plaintiff became ill, not
from the shock produced by fear of harm to himself,
but from the shock of seeing another person killed.
The court held that this harm was too remote a conse-
quence of the negligence."

We do not commit ourselves fully to this doctrine,
because not now necessary.

The same author further says (Id. pp. 75, 76) : "A
miscarriage resulting from threats to arrest a debtor
husband, by the unlawful imprisonment of a husband,
or by wrongfully procuring him to be indicted, is not
the reasonable or natural result of such acts. One who
engages in a quarrel with the husband of a woman who
is enceinte, the quarrel being carried on in her hearing
without knowledge of her presence or condition, is not
liable for a miscarriage."

The case most like the present which we have been
able to find is that of *Phillips v. Dickerson,* 85 Ill. 11,
28 Am. Rep. 607. The effect of that decision is well
stated in the first two headnotes, as follows: "Dam-
ages, to be recoverable, must be the natural and reas-
onable result of the defendant's act: If of such a con-

sequence as, in the ordinary course of things, would flow from the act, or, in the cases of contract, if it appears to have been contemplated by both parties, they may be recovered, otherwise they are too remote. A party cannot be held responsible for injuries which could not reasonably have been foreseen or expected as the result of his misconduct.

"Where a married woman sued to recover damages resulting from a fright which caused a miscarriage, and it appeared that the fright was caused by a quarrel between the defendant and the plaintiff's husband and a boy, within her hearing, but out of her sight, but not that the defendant knew she heard the same, or her condition, it was held, on demurrer to the evidence, that no recovery could be had."

The facts in that case are fully stated in the opinion, and it will be seen that they make a much stronger case than do the facts in this case, and yet a demurrer to the evidence in that case was held proper. The court in that case, speaking through Sheldon, C. J., said: "The evidence tending to prove any knowledge by defendant of the place where plaintiff was at the time, and, much more, of her condition, was altogether too slight to support a finding of such knowledge, and may properly be considered, in this regard, as no evidence. Such knowledge, then, does not stand admitted by the demurrer.

"The result complained of was not such a consequence as, in the ordinary course of things, would flow from defendant's conduct. He had no reason to apprehend that what took place between himself, and Phillips, the husband, and the boy alone would occasion danger to some third person, who was not present, through fright. The injury in question not being one which the defendant could reasonably be expected

[Crawford, et al. v. McMickens.]

to anticipate as likely to ensue from his conduct, we cannot regard it as the natural consequence thereof, for which defendant is legally responsible."

While the decisions on the subject of damages recoverable on account of fright are so conflicting as (in the language of Justice Lamar, of the Supreme Court of the United States) to amount almost to anarchy, yet we do not feel willing to further extend the rule to embrace cases like this.

In the case of *Pullman Co. v. Lutz,* 154 Ala. 522, 45 South. 676, 14 L. R. A. (N. S.) 907, 129 Am. St. Rep. 67, this court, per Dowdell, J., said: "The evidence is without dispute that the plaintiff received no personal injury, and the only loss sustained as to property rights was the payment of 5 cents street car fare. It is true her evidence shows that she suffered mentally from fright because of her surroundings at the time and place of being discharged from the train; but these conditions were but momentary, and attended with no serious consequences whatever to body or mind. The weight of authority seems to be that mere fright, unattended by any harmful results to the person frightened in mind or body, furnishes no ground for the recovery of compensatory damages. This doctrine accords with the sense of natural justice. There being no loss or injury to the person consequent upon the fright, but merely momentary mental suffering, there is nothing to reimburse."

For the errors pointed out, the judgment must be reversed and the cause remanded.

ANDERSON, C. J., and MCCLELLAN and GARDNER. JJ., concur.