(81 South. 671)

FAYET v. ST. LOUIS & S. F. R. CO. et al.
(6 Div. 823.)

(Supreme Court of Alabama.  April 10, 1919.)

1. RAILROADS ⊂⊃328(2) — CROSSINGS — CONTRIBUTORY NEGLIGENCE — DUTY TO STOP, LOOK, AND LISTEN.

An automobile driver approaching a railroad crossing should not before stopping proceed to a point where by reason of obstructions a train could not be observed or heard in time to avoid a collision.

2. RAILROADS ⊂⊃348(4) — WARNINGS AT CROSSING—EVIDENCE.

Where train crew testified that bell was rung while approaching a crossing, testimony of an automobilist, who did not cut off his engine before going upon the track, that he heard no bell, did not raise a conflict.

3. EVIDENCE ⊂⊃8—JUDICIAL KNOWLEDGE—LAWS OF NATURE.

In determining the speed of a train from the distance required to stop it, courts and juries may consider ordinary observations of the law of nature or physics as to power and weight affecting momentum.

4. RAILROADS ⊂⊃339(1) — CROSSINGS — WANTON CONDUCT.

Where railroad had a man with a lantern on a car which was being backed six or eight miles an hour over a crossing, who promptly, when plaintiff's danger became apparent, signaled the engineer and attempted to give plaintiff warning, the railroad was not liable for wanton conduct.

5. APPEAL AND ERROR ⊂⊃907(2)—PRESUMPTIONS—CHARGE—ABSENCE OF PHOTOGRAPHS.

In the absence of photographs introduced in evidence, charges involving rulings of court applying law of case to all the evidence must be presumed correct.

6. APPEAL AND ERROR ⊂⊃882(13)—HARMLESS ERROR—WAIVER OF ELEMENT OF DAMAGES.

In action for injuries to automobile and automobilist at railroad crossing, where plaintiff and his attorney both stated that they attached no importance to compensatory damages for physical injuries, no complaint could be made to a charge that no damages could be assessed for physical injuries.

7. RAILROADS ⊂⊃327(1)—CROSSINGS—DUTY TO STOP, LOOK, AND LISTEN.

A person intending to cross a railroad track must stop, look, and listen within such nearness to the track and under such circumstances as will afford him knowledge whether or not he may cross with reasonable safety, and this duty is a continuing one to the extent of excluding the injection of an element of danger in his attempt to cross between the time he last stopped, looked, and listened and the time he enters the zone of danger.

8. RAILROADS ⊂⊃320 — CROSSINGS — DUTY OF CARE.

Trainmen are charged with the duty of operating trains over public crossing with due care; but they may assume, until the contrary becomes clearly apparent to them, that persons, apparently adults driving vehicles, will exercise due care to prevent a collision by not going upon the track when a train is approaching.

Appeal from Circuit Court, Jefferson County; John H. Miller, Judge.

Action by M. A. Fayet against the St Louis & San Francisco Railroad Company and others for injuries in a crossing accident. Judgment for defendants, and plaintiff appeals. Affirmed.

The following is charge B:

Even if you believe from the evidence that there was no light on the end of the car and no bell was ringing or whistle blown as the train approached the crossing, such failure on the part of the operators would not be gross or wanton negligence entitling the plaintiff to recover punitive damages in this case.

Charge A. You are not authorized to assess any damages in favor of the plaintiff for or on account of physical injury alleged to have been suffered by the plaintiff.

Charge 19. One who is about to cross a railroad track must stop so near to the track, and his survey by sight and sound must so immediately precede his effort to cross over it, as to preclude ejection of an element of danger from an approaching train into the situation between the time he stopped, looked, and listened and his attempt to proceed across the track.

Charge 9. Under the law it is the duty of a person intending to cross a railroad track to stop, look, and listen for approaching trains; and this use of the senses must be made within such nearness to the track and under such circumstances as will afford the traveler the knowledge whether or not he may cross the track with reasonable safety from collision with the approaching train, and I charge you that this duty is a continuing one to the extent of excluding the injection of an element of danger in his attempt to cross between the time he last stopped, looked, and listened, if he did so, and the time he entered the zone of danger created by trains moving over the crossing.

Charge 14. Those in charge of the railroad trains operating over public railroad crossings are charged with the duty of operating the trains with due care; but I further charge you that they may assume, until the contrary becomes clearly apparent to them, that persons, apparently adults driving automobiles or other vehicles, will exercise due care to prevent a collision with the train by not going upon or remaining upon or in dangerous proximity to the track at a time when a train is approaching a crossing.

W. A. Denson, of Birmingham, for appellant.

Forney Johnston and W. R. C. Cocke, both of Birmingham, for appellees.

THOMAS, J.  The suit was for damages alleged to have resulted from a collision between an automobile driven by the plaintiff and one of defendant's trains. It occurred at

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

a public railroad crossing within the corporate limits of the city.

The complaint contained counts for simple negligence and for wanton conduct in the improper operation of the train. To these counts pleas of contributory negligence were interposed and demurrer sustained thereto, in so far as they purported to answer the wanton count. No demurrer was directed to said pleas as answer .to the simple negligence count. A trial on the merits resulted in a verdict and judgment for defendant.

[1] It is unnecessary to discuss in detail the evidence. We have carefully considered it and are of opinion that plaintiff should not have recovered under the simple negligence count. A. C. L. R. R. Co. v. Jones, 80 South. 44;[1] Rothrock v. A. G. S. R. R. Co., 78 South. 84;[2] Bailey v. Sou. Ry. Co., 196 Ala. 133, 72 South. 67; A. G. S. R. R. Co. v. Smith, 191 Ala. 643, 68 South. 56; L. & N. R. R. Co. v. Turner, 192 Ala. 392, 68 South. 277; Sou. Ry. Co. v. Irvin, 191 Ala. 622, 68 South. 139; Bason v. A. G. S. R. R. Co., 179 Ala. 299, 60 South. 922; L. & N. R. R. Co. v. Williams, 172 Ala. 560, 55 South. 218; L. & N. R. R. Co. v. Calvert, 172 Ala. 597, 55 South. 812; C. of G. Ry. Co. v. Barnett, 151 Ala. 407, 410, 44 South. 392; C. of G. Ry. Co. v. Foshee, 125 Ala. 199, 212, 27 South. 1006. No element of subsequent negligence being made an issue in the case, these observations made in Rothrock v. A. G. S. R. R. Co., supra, have application to the facts before us:

"It was shown without dispute that this driver did not stop, or attempt to stop, his machine before permitting it to proceed to a point where the approach of the train could be observed and the danger from collision therewith averted. If the approach of the train could not have been seen or heard, because of obstructions in that direction, before the car reached the right of way, then the driver's duty was to not permit the car to proceed to a point where the approach of the train could not be observed or noted in time to avoid the danger. L. & N. R. R. Co. v. Williams, 172 Ala. 560, 55 South. 218; Foshee's Case, supra; C. of Ga. v. Barnett, 151 Ala. 410, 44 South. 392."

[2] Consideration of the evidence will show no conflict as to whether the bell of the engine was ringing while the train approached and reached the crossing. The plaintiff, his son, and his wife, as witnesses, testified only that they heard no bell. This was a probable fact in view of the plaintiff's own admission that he did not stop his automobile or cut off his engine before going near or on the track. The engineer and fireman in charge testified that the necessary and required signal was given at said time and place.

Of the speed of the train when approaching the crossing, there was no material dispute of the fact that it approached the crossing at a very low rate of speed—from 4 to 8 miles an hour. Defendant's witnesses variously

[1] 202 Ala. 222.　　　[2] 201 Ala. 308.

estimated the speed to have been between 4 and 6 miles, and plaintiff testified that it was 6 or 8 miles an hour. The other occupants of the car at the time of the collision made no estimate of said speed and testified to no fact thereof contrary to the foregoing. It is true that one McCarty, a former engineer, testified that, from the distance required to stop train, it must have been running 25 miles per hour; yet that witness admitted that he had never run a "mallet compound" engine (called a "double ender"); that he had run a "consolidated" on the L. & N., and with a freight train of 21 cars, at a crossing practically level, going at the rate of 5 or 6 miles an hour, all air brakes on the cars in perfect order, he could stop such train at such place instantly. This witness, though testifying, "All I have got to do is to apply the brake and stop just like that (indicating), * * * stop that quick (snapping his fingers)," admitted that the ability to stop so quickly as indicated was dependent upon whether the cars propelled were loaded or "empties," whether the track was wet or dry, and that a difference of two miles an hour in the speed of the train would make little difference as to the distance in which the stop could be made.

[3] When the whole evidence is considered, it is not disclosed whether the track, at the time and place, was wet or dry; whether the 21 cars being propelled were loaded or empty; and whether the engine propelling the train was a "mallet compound," "consolidated," or other and different make. In the absence of evidence of such material conditions indicated by Mr. McCarty, as entering into the distance in which a stop may be made when the train is proceeding at a given rate of speed per hour, it may be that witness' judgment of the distance in which defendant's train, propelled at 6 or 8 miles an hour, could have been stopped, or the rate of speed such train was proceeding that required the given distance within which to stop, was not in material conflict with the positive evidence of the only eyewitness on the question of speed at which defendant's train was actually proceeding before and when the collision occurred. The common or judicial knowledge of courts and juries as to such question is a reference to the ordinary observations of the law of nature or physics as to power and weight affecting momentum. In connection with the evidence, no doubt this universal fact was looked to by the jury in consideration of the question of the speed of defendant's train and the ability to stop such a moving train within the given space to or from the point of collision. Plaintiff further testified, in part, as to the locus in quo, as follows:

"I am acquainted with the extent to which that crossing was used about the 2d day of last September. I couldn't say about how many peo-

ple used that crossing every 24 hours, because it is thickly populated, and I am never down there close to the road; but, generally, the way they pass by the house, there are a good many machines. * * * A good many people use it going to and from work, going to their work at Pratt City and Thomas. This accident occurred about 7 or 7:30, and the usage of it is slacker at that time"—that is, at the time of the collision.

There was other evidence tending to show that this crossing was used by a number of people—between 300 and 500 persons—crossing over in 24 hours; but with what frequency the crossing was used (as to time of the day) is not otherwise shown than by the plaintiff himself, who testified on direct examination that at the time of the accident "the usage of" the crossing "is slacker." The testimony did not show that the crossing was ever crowded, or that any confusion of traffic existed there at any time of the day or night. As a matter of fact, the evidence showed that the highway was not strictly a street, but merely a suburban macadamized road.

Among other things, plaintiff testified of the location of the tracks and obstructions standing on the same as follows:

"That first track and the main track where I was struck are about six feet apart. The train was backing, going towards Pratt City. You can see the other track along here (indicating).

"Q. Was that car yonder to your right as you were going across and that bunch of cars to the left? A. That bunch of cars was to the left, the big bunch as I was going across; and this single car that it knocked me up against was on the right on the third track, and the train was going that way, coming towards Birmingham from the direction of Amory, Miss. The train that struck me was coming from the direction of the whole string of cars. * * * I didn't see * * * lights on the back of the car; it was dark. I was going south; the engine was going west, and there was a whole string of cars right in there (indicating). That track was full, and these cars cut off my view of the main track. I couldn't see the main track at all until we got up where the road was; you could see on the right-hand side, but you couldn't see on the left. I did not hear any bell. I could not say whether there was any ringing or not. * * * There was nobody at the end of that car; I have sworn to it, and I will swear to it again. I saw somebody after the accident occurred about 40 or 50 feet ahead of me and between my machine and the switch that was there then and that is moved now. The train was in front of me, and the party was in front of me. The train had already knocked me around and had me headed towards Birmingham in my car. There wasn't anybody on the crossing at all until after I was struck, and I saw a man on the track up there 40 or 50 feet. I couldn't tell who he was, but he had a lantern swinging on his arm."

Though plaintiff denied that the flagman with the lantern was on the back end of the car as it proceeded, he admitted hearing a man "holler" and saw some one with a lantern at the crossing or 40 or 50 feet therefrom after the impact. This was strongly corroborative of the flagman's testimony that he was on the front of the approaching car with the lighted lantern, and that he "hollered" and jumped from the car just as he saw the collision was immediately imminent.

Plaintiff's wife testified that the crossing was more often used at the hour of the collision than at any other time; and his son testified that it was extensively used about that time of the day.

If the photographs introduced in evidence, with reference to which witnesses testified, had been reproduced in the record, they might, and doubtless would, shed light on whether the crossing was within a populous city or town, or was merely an improved suburban roadway leading from the two municipalities. Witnesses testified with reference to these photographs (of the location of the tracks, the obstructing cars standing thereon at the time, and the view of the tracks from the direction in which the automobile approached); and such references in the testimony to the photographs of the locus in quo come dangerously near creating contradictions in the bill of exceptions reciting that it contained all the evidence. L. & N. R. R. Co. v. Jenkins, 196 Ala. 136, 140 (3), 72 South. 68.

[4] The evidence shows that defendant had a man with a lighted lantern on the front part of the car in the direction in which it was proceeding; and that, aside from carrying a light signal, he did all that could have been reasonably expected of him and of a reasonably prudent flagman, when plaintiff's danger became apparent, promptly and properly to signal the engineer of the danger of collision and to give the plaintiff warning of his danger; and that the engineer likewise used due diligence to avoid the collision. Brown & Flowers v. C. of G. Ry. Co., 197 Ala. 71, 72 South. 366. Pertinent observations of willful and wanton conduct at public crossings are contained in H. A. & B. R. R. Co. v. Sampson, 91 Ala. 560, 8 South. 778; A. G. S. Ry. Co. v. Smith, 196 Ala. 77, 71 South. 455; Weatherly v. N. C. & St. L. Ry., 166 Ala. 575, 51 South. 959; Ga. Pac. Ry. Co. v. Lee, 92 Ala. 262, 9 South. 230.

[5] In the absence of the photographs introduced in evidence, charges which involve rulings of the trial court applying the law of the case to all the evidence must be presumed by this court to have been properly given when referred to the omitted evidence. Defendant's given charge B may be justified for this reason. L. & N. R. R. Co. v. Jenkins, supra; B. R. L. & P. Co. v. Canfield, 177 Ala. 422, 429, 59 South. 217; Southern Ry. Co. v. Wyley, 75 South. 326.[3] Under the facts before us, the charge is free from reversible error.

[6] Of plaintiff's physical injuries, his wife testified he was not hurt (that she knew of);

[3] 200 Ala. 14.

and plaintiff testified: "I was not hurt; * * *" was "scared pretty badly at the time"; but was "not suing for that." On re-direct examination, plaintiff testified that his nervous system was shocked to the extent that he could not work for several days; that he was working for $4.32 per day at the time of his accident. While plaintiff's counsel was addressing the jury, he was asked by defendant's counsel "if he claimed any compensatory damages as neither he (plaintiff) nor any property was injured, according to plaintiff's testimony"; to which plaintiff's counsel replied: "We attach no importance to compensatory damages." Thus, plaintiff waived his damage for loss of wages for the time he did not work subsequent to the collision. We will not reverse for the giving at defendant's request in writing charge A. Crawford v. McMickens, 190 Ala. 102, 107, 66 South. 712; Engle v. Simmons, 148 Ala. 92, 41 South. 1023, 7 L. R. A. (N. S.) 96, 121 Am. St. Rep. 59, 12 Ann. Cas. 740.

[7] Defendant's given charge 19 is taken from the books and had proper application to the facts disclosed by the record. Bailey v. Southern Ry. Co., 196 Ala. 133, 72 South. 67; L. & N. R. R. Co. v. Turner, 192 Ala. 392, 68 South. 277; Southern Ry. Co. v. Irvin, 191 Ala. 622, 624, 68 South. 139; Bason v. A. G. S. R. R. Co., 179 Ala. 299, 60 South. 922; A. C. L. R. R. Co. v. Jones, 202 Ala. 222, 80 South. 44; Cent. of Ga. v. Foshee, 125 Ala. 199, 27 South. 1006.

Charge 9 was properly given. Cent. of Ga. v. Foshee, supra, 125 Ala. 199, 27 South. 1006; Bason v. A. G. S. R. R. Co., supra; Central of Ga. Ry. Co. v. Barnett, 151 Ala. 407, 44 South. 392.

[8] The giving of charge 14 finds support in Bason v. A. G. S. R. R. Co., supra; Anniston Elec. & Gas Co. v. Rosen, 159 Ala. 195, 48 South. 798; Sands v. L. & N. R. R. Co., 156 Ala. 323, 47 South. 323; A. G. S. R. R. Co. v. Linn, 103 Ala. 134, 15 South. 508; Brown & Flowers v. Cent. of Ga. Ry. Co., 185 Ala. 659, 662, 64 South. 581.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.