(86 South. 396)

HINES, Director General of Railroads, v. COOPER. (7 Div. 99.)

(Supreme Court of Alabama. Oct. 21, 1920.)

1. Appeal and error ⬅️1078(3)—Grounds of demurrer, not argued, abandoned.

Where defendant, who has assigned the overruling of demurrer to several counts as error, merely argues the overruling of demurrer to one of the counts, he abandons the grounds of demurrer directed to the other counts.

2. Railroads ⬅️344(5)—Count held to charge negligence.

A count charging negligence of railroad employés in permitting a train to run against an

automobile and cause driver's injuries *held* sufficient as against demurrer.

**3. Railroads ⬤⟞344(5)—Count held to charge negligent failure to keep lookout.**

A count alleging that train employés negligently failed to keep a vigilant lookout for automobiles crossing the track, and that as a proximate result of such negligence the train ran against plaintiff's automobile, *held* sufficient as against demurrer.

**4. Railroads ⬤⟞327(2)—Automobile driver, failing to look, held guilty of contributory negligence.**

An automobile driver, who could have seen approaching train in time to have avoided collision, if he had looked, and who failed to stop and look before going on the track, *held* negligent as a matter of law.

**5. Railroads ⬤⟞335(5)—Contributory negligence, proximately causing injury to automobile driver, precludes recovery.**

Automobile driver cannot recover for injuries in a collision, though the railroad was guilty of simple initial negligence which proximately caused the injury, if he was guilty of breach of duty in failing to stop; look, and listen before proceeding to the point of danger, which contributed to or was a proximate cause of injury.

Appeal from Circuit Court, Etowah County; W. J. Martin, Judge.

Action by Homer Cooper, by next friend, against Walker D. Hines, as Director General, operating the Nashville, Chattanooga & St. Louis Railway, for damages for injury to person and property. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under section 6, p. 449, Acts 1911. Reversed and remanded.

Goodhue & Brindley, of Gadsden, for appellant.

Under his own testimony plaintiff was as a matter of law guilty of contributory negligence. 196 Ala. 131, 72 South. 25; 192 Ala. 392, 68 South. 277; 151 Ala. 407, 44 South. 392; 202 Ala. 222, 80 South. 44; 201 Ala. 308, 78 South. 84; 172 Ala. 560, 55 South. 218. The burden was on the plaintiff under count 5 to establish the fact of a failure of defendant's servant to keep a vigilant lookout, and the court erred in its oral charge relative thereto. 112 Ala. 642, 20 South. 1003; 159 Ala. 276, 48 South. 682; 7 Ala. App. 591, 62 South. 253. Count 4 was subject to the demurrer. 112 Ala. 642, 20 South. 1003.

Disque & Disque, of Gadsden, for appellee.

The question of contributory negligence on the part of the plaintiff was not free from doubt, and therefore became a jury question. 151 Ala. 355, 43 South. 867; 16 Ala. App. 308, 77 South. 458; 172 Ala. 597, 55 South. 812; 172 Ala. 560, 55 South. 218; 74 Ala. 150; 128 Ala. 546, 29 South. 602.

The accident happened at a public crossing, and this placed the burden on the railroad to acquit itself of any negligence. Sections 5473, 5476, Code 1907; 151 Ala. 355, 43 South. 867; 142 Ala. 238, 37 South. 929; 74 Ala. 150. The pleadings were sufficient.

THOMAS, J. The suit was to recover damages for personal injuries sustained by collision at a public road crossing, where defendant's railroad track crosses a street in the city of Attalla. The trial, on several counts of the complaint, was for simple negligence. Of count 1 the gravamen was a general charge of negligence; of count 4, negligently failing to blow the whistle or ring the bell at short intervals, while the train was passing through the city and across one of its streets; and count 5 charged negligence in failing to keep a sharp or vigilant lookout for automobiles and other vehicles and persons crossing defendant's track at the point where it crosses said Line street, and as a proximate consequence of such negligence plaintiff's automobile, which was being driven by him, was run against by said train, and plaintiff injured. The overruling of demurrer interposed to the respective counts is assigned as error.

[1] Counsel for appellant, stating "proposition of law," only argue the overruling of demurrer to count 4. This may be an abandonment of grounds of demurrer directed to counts 1 and 5. Georgia Cot. Co. v. Lee, 196 Ala. 599, 603, 72 South. 158. However, an inspection of said counts discloses that they were not subject to the respective demurrers directed thereto.

[2, 3] In count 1 it is averred that defendant was operating the Nashville, Chattanooga & St. Louis Railway through the city of Attalla on or about March 23, 1919, and a certain train upon that railway, composed of a steam locomotive engine and cars, ran across the public street known as Line street when plaintiff was crossing in an automobile as he proceeded along the street, and that the said train ran against his automobile, and as a proximate consequence thereof he was injured; that the agents and servants of defendant, who had charge and control of the train, acting within the line and scope of their authority, negligently caused or allowed the same to run against said automobile, causing plaintiff's injuries. Count 5, in words and figures as count 2, contains the additional averment that the agents and servants of the defendant, who had charge and control of, and were managing and operating, said train, negligently failed to keep a sharp or vigilant lookout for automobiles or other vehicles and persons crossing the railroad track at the point

---

⬤⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

where said railway crosses said Line street, and as a proximate consequence of said negligence said automobile, operated or driven by plaintiff at the time, was run against, and plaintiff injured and damaged. A duty and its breach, and the proximate injury and damage, is properly averred in each count.

[4] Defendant insists that, in view of the physical surroundings and plaintiff's own testimony, as a matter of law plaintiff was guilty of contributory negligence, and requested in writing the general affirmative charge, which was refused. This charge should have been given, as the evidence is uncontradicted that plaintiff failed to discharge his duty by not stopping and looking in the direction of the approaching train, before going upon the track. If there had been anything to obstruct his view along the track from whence the train approached, it would have emphasized plaintiff's duty to observe the foregoing rule. In Atlantic Coast L. R. Co. v. Jones, 202 Ala. 222, 223, 80 South. 44, 45, the rule is thus stated:

"It is well settled by a long line of decisions by this court that a person attempting to cross a railroad track on which cars and locomotives are liable to be moving must stop, look in both directions, and listen before going on the track. * * * This duty is absolute at any railroad crossing, whether in a city or the country, or whether the track crossed be the main line or a side track, and regardless of the frequency of passing trains, and, if a failure to discharge this duty was the proximate cause of injury, the traveler cannot recover as for simple initial negligence on the part of the railroad. Of course, we have held in a few cases, not that it was not the traveler's duty to stop and to look and listen, but that he might be excused from this duty when he could not have performed same because of his inability to do so, for instance, where his team was running away, but when he can do so it is his absolute duty to observe this salutary rule of self-preservation, regardless of the time or place ot crossing or of the schedule or infrequency of passing trains."

In Rothrock v. Alabama Great Sou. R. Co., 201 Ala. 308, 309, 78 South. 84, 85, it is said:

"The application to the undisputed evidence of pertinent pronouncements made in Cen. of Ga. Ry. Co. v. Foshee, 125 Ala. 212, 213, 27 South. 1006, definitions of the duty of a traveler approaching a public road crossing of a railway that have been repeatedly reaffirmed by this court, confirm the correctness of the trial court's action in giving the affirmative charge at defendant's request. It was shown without dispute that his driver did not stop, or attempt to stop, his machine before permitting it to proceed to a point where the approach of the train could be observed and the danger from collision therewith averted. If the approach of the train could not be seen or heard, because of obstructions in that direction, before the car reached the right of way, then the driver's duty was to not permit the car to proceed to a point where the approach of the train could not be observed or noted in time to avoid the danger. L. & N. R. R. Co. v. Williams, 172 Ala. 560, 55 South. 218; Foshee's Case, supra; C. of Ga. v. Barnett, 151 Ala. 410, 44 South. 392."

The decision in Atlantic Coast L. R. Co. v. Jones, supra, was followed by Fayet v. St. L. & S. F. R. Co., 203 Ala. 3, 81 South. 671, where Rothrock v. A. G. S. R. Co., supra, and L. & N. R. Co. v. Williams, 172 Ala. 560, 55 South. 218, were quoted with approval.

Without intending to infringe upon the doctrine of the foregoing cases by this court as to plaintiff's duty to stop, look, and listen, may we say of the evidence touching on the proximate cause of plaintiff's injury—no element of subsequent negligence being made an issue under the evidence (L. & N. R. R. Co. v. Loyd, 186 Ala. 119, 65 South. 153)—the track in the direction from whence the engine approached (from Attalla) ran straight for more than a quarter of a mile, and there was no obstruction sufficient to obscure it from the driver of the car on Line street for a distance of 20 feet before reaching the crossing, and that, when the front wheels of the automobile were upon the first rail of the track, the approaching engine was 150 feet distant?

The plaintiff as a witness showed that by stopping his car at any safe distance before proceeding upon the crossing and by looking toward Attalla the train would have been observed and permitted to pass without injury to him. He said:

"If my car had been standing still when I first saw the train, I could not have backed out. I do not think so, for it came so quickly that I do not think I could have gotten out of the way."

He had testified of the location of his car that, when he first saw the train, his front wheels were just going on the first rail of the track. The foregoing testimony is an admission on plaintiff's part that the train was so near and approaching at such a rate of speed that, if he had stopped his automobile in a place of safety before his front wheels reached the first rail, the proximity and speed of the train would have brought the engine to the crossing before the automobile could have been set in motion by the driver. If the engine was within 250 feet of the crossing when the front wheel of the automobile was within 5 or 6 feet of the crossing, this evidence shows conclusively that the plaintiff could have seen the engine, standing 17 feet high on the track, if he had performed his duty of stopping and looking in the direction from whence the train proceeded.

Aside from such admissions on plaintiff's part, a consideration of the map and photographs will show that the view of and from

this crossing was not obstructed, in the sense that a train could not be seen approaching in the direction from whence this train was proceeding for a sufficient or convenient distance, if plaintiff had stopped and looked in the direction of Attalla. Perhaps it would be well that we reproduce plaintiff's statements. He said:

"Standing within a distance of 5 feet of the nearest rail of the N., C. & St. L. track at Line street crossing, one could not see very far down the track toward the Attalla station; I guess about 25 yards. There are weeds there to prevent you from seeing. They were not over a man's head in March"—23d, the date of the collision—"but they were high. I do not know just how far you could see the train down that track last March when you were within 5 feet of it at Line street crossing. I don't think you could have seen it as much as 150 yards. The fence prevented you from seeing it and cut off the view until you got right close to the track. If I was standing within 5 feet of the first rail, I could see the train approaching for 50 yards. There was nothing to prevent me from seeing it, but the fence and the vines on it. The only thing to prevent me seeing the train was the fence that run for about 150 to 200 yards down the track. *There was no weeds there at the time of the accident above my head between the fence and along close to the track.* The land about 10 feet to the track was higher than the track. * * * I do not know whether they could see a train over the weeds. I don't believe I could. Those weeds in March were about 3 feet high, I guess. That would throw them 7 feet above the railroad track, and the weeds came to within 20 yards of Line street crossing. In this 20 yards there was nothing, and out 10 feet along the side of the railroad track there were no weeds, and the ground was not higher. Ten feet from this track nearest the railroad there were no weeds there to obstruct my view. I was going between 5 and 8 miles an hour until I got to Line street. There was nothing obstructing my view out 10 feet from the rail nearest me for a distance of 150 or 200 yards down the track. The weeds were not so powerful high at that time. There was nothing to obstruct my view in approaching for a distance of 10 feet from the track. * * * I don't know what the wheel base of a Ford is. It was about 5 feet from the front end of the Ford car back to the driver's seat, where I was sitting. My head, when I was sitting in this Ford car, was about 5 feet above the ground. I am about 5½ feet tall. * * * When I ran on the track I was looking for a train. I was pretty close to the track when I looked down it. I looked first toward Gadsden. * * * I looked up the other way after I got where I could see around the vines and weeds. I was pretty close to the track. I never did stop before going on the track, but slowed down."

Thus he failed in his first duty to insure his safety. Of his effort to look for the train he said:

"Just after I looked up the track toward Attalla, I saw the train. At that time I was just going on the track. I began looking down the track before I got out of Fifth avenue, and continued looking down until I got past the vines, and the moment I looked up the track I saw the train. My front wheels were just about touching the rails then. I guess I would have seen the train for about 50 yards, if my Ford had been standing still, with the front end about 3 feet from the nearest rail. If I had gone within 3 or 4 feet of the rail, I could have seen a train coming from Attalla at least 50 yards, if I had brought my car to a standstill."

Of his effort to extricate himself from peril, or the appearance to him in peril of his ability to back off the track, he said:

"With my car standing still in such a position, I could have backed up, but would have had to back up a little grade. I had shut my power off and coasted down this little grade. I had on my brakes to a certain extent. If my car had been standing still when I first saw the train, I could not have backed out, * * * for it came so quickly. * * * I would have had to throw it in reverse in order to back out. I guess I could have, if I had known it was coming."

The most favorable deductions from plaintiff's evidence of the locus in quo and of the obstructions thereon preventing a view of the approaching train were that the vines and briars on the fence at a point not nearer than 20 feet from the first rail of the track would not obstruct his view along the track toward the direction from whence the train came. He testified that, sitting in his Ford car, his head was about 5 feet above the ground; that the obstructions on the fence made the same about 7 feet above the railroad track, but that it did not extend to the track, and stopped "within 20 yards of Line street crossing," the place of the accident. Thus plaintiff demonstrated that the approaching engine could have been observed for a sufficient distance from the crossing to have given an opportunity to avert the collision, if only the plaintiff had discharged his duty, as we have indicated it was his duty to have done in the premises.

[5] The true test to have been applied by the circuit court in determining whether the general affirmative charge should have been given to the defendant, on its request in writing, under its plea of contributory negligence, was: Admitting that defendant was guilty of simple initial negligence, which proximately caused or contributed to the injury, was the plaintiff guilty of such a breach of duty as that it contributed to or was a proximate cause of his injury, or would the injury have occurred if the plaintiff had performed his duty of stopping, looking, and listening before proceeding to the point of danger? This the plaintiff failed to do, to his own injury and damage.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.