181 So. 253
### JOHNSTON v. SOUTHERN RY. CO. et al.
### 6 Div. 184.

Supreme Court of Alabama.

March 31, 1938.

Rehearing Denied May 26, 1938.

Harsh, Harsh & Hare, of Birmingham, for appellant.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellees.

186

BOULDIN, Justice.

Action under the Homicide Act, Code 1923, § 5696.

The death of plaintiff's intestate resulted from a collision of an automobile with a freight car at a public street crossing. The trial court gave the affirmative charge, with hypothesis, for defendants. This ruling is the primary question for review.

Without dispute plaintiff's intestate drove his automobile into the freight car, a part of a passing freight train, while the train was standing or slowly moving over the crossing in regular course.

In St. Louis-San Francisco Ry. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A.L. R. 1110, and Southern Railway Co. v. Lambert, 230 Ala. 162, 160 So. 262, this court considered the question of initial negligence of the railway company in an action by a passenger in the automobile coming in collision with a railway car standing upon a crossing; cases in which contributory negligence of the driver of the automobile were not involved. In the instant case, without conflict in the evidence, the unfortunate victim drove his automobile, at a speed variously estimated by plaintiff's witnesses at 30 to 45 miles per hour, head-on into the freight car, in the nighttime, without stopping, looking, and listening.

There is some evidence of low visibility because of fog; some evidence of a slight change of grade in the street as the automobile approached the crossing, affecting in some measure the zone in which the headlight of the automobile would be effective; some evidence of blending colors of pavement and freight car. These matters are greatly stressed as affecting the duty of a railway company at such crossing. As to this question we see no occasion to indulge further discussion than appears in the Guthrie and Lambert Cases, supra, and the long line of cases therein cited.

On the question of contributory negligence, it appears, without dispute, that the decedent was quite familiar with this crossing. The conditions relied upon as rendering it more hazardous to motorists only emphasize the importance of observing the duty to stop, look, and listen, and to have the automobile under control.

This legal duty grows out of the well-known fact that a train cannot be stopped, or removed, if already on a crossing, with the same dispatch as a motorcar equipped as the law requires. It is a duty to see that the crossing is clear of danger from approaching trains, and even a more patent duty when the train is already on the crossing, and its presence is a warning. This court has often, with great emphasis, declared it is negligence as matter of law to disregard this duty. We think it a rule conservative of human life, and therefore to be steadfastly applied. Granting that cases may appear where delusive conditions may render a vigilant compliance with this rule ineffective to avert accident, no such case

appears here. We must hold under the undisputed evidence the unfortunate victim of this accident was chargeable with contributory negligence as a proximate cause of his injury, which defeats this action as for initial negligence, if any, on the part of the trainmen. Atlantic Coast Line R. Co. v. Jones, 202 Ala. 222, 80 So. 44; Louisville & N. R. Co. v. Calvert, 172 Ala. 597, 55 So. 812; Central of Georgia Railway Co. v. Barnett, 151 Ala. 407, 410, 44 So. 392; Central of Georgia R. Co. v. Foshee, 125 Ala. 199, 27 So. 1006; Johnson v. Louisville & N. R. Co., 227 Ala. 103, 148 So. 822; Hines v. Cooper, 205 Ala. 70, 88 So. 133; Louisville & N. R. R. Co. v. Turner, 192 Ala. 392, 68 So. 277; Rothrock v. Alabama Great Southern R. Co., 201 Ala. 308, 78 So. 84; Louisville & N. R. R. Co. v. Williams, 172 Ala. 560, 55 So. 218; Fayet v. St. Louis & S. F. R. Co., 203 Ala. 3, 81 So. 671; Pollard v. Rogers, 234 Ala. 92, 173 So. 881.

Turning to the inquiry of negligence after discovery of peril, we find again without conflict that the automobile ran into the thirteenth car (loaded with logs) in a train of 26 cars. No evidence in the record would warrant a reasonable inference that the trainmen, engineer and fireman on the engine, or conductor and flagman in the caboose, or any of them, had knowledge of such collision at the time. Their direct testimony is to the contrary.

It appears this regular freight train passing near 3 o'clock a.m. was required by legal regulations to make a series of stops, first, just before reaching this crossing on Nineteenth street in the city of Bessemer, because of a crossing of a street car track at that point; second, some 12 car lengths further eastward at a crossing of Louisville & Nashville railroad tracks. Still further on, something more than half a train length, was the water tank at which this engine was to take water. The first stop had been made and the train pulled up to the second before this collision.

Plaintiff's witnesses are at variance whether the train was moving at the time. Without question it had reached the Louisville & Nashville crossing, and the weight of evidence, though not an essential inquiry, indicates the train had again begun to move on toward the water tank when the collision occurred. There is no question of the train obstructing the crossing an unreasonable length of time as held in the Lambert Case, supra.

The main contention that a jury question was presented on negligence after discovery of peril is based upon phases of evidence to the following effect. It appears that the automobile after the collision rested in such contact with the moving train that it was bumped along and further demolished. One witness for plaintiff testified that the deceased was not thrown out of the automobile by the impact, but by this bumping process thrown under or between the cars and dragged and mangled. That he was dragged and mangled is clear.

Other evidence on the part of the trainmen is to the effect that the flagman in the caboose by manipulation of the air caused an emergency stop of the train, that in such case the engineer, under the rules of the company, should not move the train until he received a go ahead signal from the rear, but, in this case, he did move the train after the emergency stop without the required signal. On this line of evidence it is insisted that the deceased was not killed nor fatally injured by the impact, but was killed and mangled by the moving train after being thrown from the automobile, and while the engineer was moving the train in violation of rules.

It would probably be wholly conjectural to find that deceased had not been fatally injured by the impact. But assuming otherwise, the same evidence which discloses the emergency stop, and after movement, shows without dispute that this emergency stop was after the man was dragged, mangled, and dead. The emergency stop was made when the rear of the train had arrived so near the scene of the accident that the flagman and conductor discovered the wrecked automobile, and, when coming to a stop, discovered the fatal results.

In view of the various occasions on which such emergency stops are made, a question may arise whether the mere fact of such stops is such evidence of peril to some human being as to constitute a further movement without signal negligence after discovery of peril. This we need not decide. Proceeding on the theory that an emergency stop of this kind does say to the engineer here is a situation of peril, don't move until you get a go ahead signal, the evidence here makes no case of injury from violation of such rule. It appears, the starting of the train was a sort of test, and the train was promptly brought to a second stop on further signal from the rear.

"Knowledge of peril, as an essential predicate for guilt of subsequent negligence, means actual knowledge, and not that imputed knowledge which is based upon information merely of facts which, if followed up, would result in actual knowledge." Young v. Woodward Iron Co., 216 Ala. 330, 113 So. 223, 227; Central of Georgia Ry. Co. v. Bates, 225 Ala. 519, 144 So. 9; Southern Railway Co. v. Drake, 166 Ala. 540, 51 So. 996; Central of Georgia Ry. Co. v. Corbitt, 218 Ala. 410, 118 So. 755.

We find no evidence of such subsequent negligence as a proximate cause of the injury.

The affirmative charge, with hypothesis, was properly given for defendants on request in writing.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.