# Saxon *v.* Central of Georgia Railway Company.

## *Crossing Accident.*

(Decided April 8, 1915.   68 South. 313.)

1. *Railroads; Crossing Accident; Failure to Signal.*—The failure of the trainman to ring the bell and blow the whistle on approaching a public crossing as required by sections 5473-6, Code 1907, is prima facie simple negligence, but not actionable unless proximately contributing to an injury to a traveler struck by the train at the crossing; where the injury is the result of the traveler's own negligence, or where his negligence concurred with the simple negligence of the trainman, there can be no recovery.

2. *Same; Care Required; Stop, Look and Listen.*—The duty on a traveler to stop, look and listen before crossing a railroad track must be performed at such time and place as will enable the traveler to discover the near approach of the train.

3. *Same; Complaint.*—Although a complaint charges only simple negligence, a recovery against a railroad company for injuries to a traveler struck by a train at a crossing may be had on proof of subsequent negligence.

4. *Same; Jury Question.*—Under the evidence it was for the jury to determine whether the trainmen were guilty of any negligence after a discovery of plaintiff's peril on the track or at the crossing.

APPEAL from Coosa Circuit Court.

Heard before Hon. A. H. ALSTON.

Action by J. H. Saxon against the Central of Georgia Railway Company for damages sustained in a crossing accident. From a directed judgment for defendant plaintiff appeals. Reversed and remanded.

RIDDLE, ELLIS & RIDDLE, for appellant.

BARNES & BREWER, for appellee.

GARDNER, J.—Suit by appellant against appellee for damages for personal injury received at a public road crossing in the town of Goodwater. Trial was had upon counts A and B, count A relying for recovery upon simple negligence, and count B upon wanton, or

willful wrongful conduct in the operation of the engine by the servants of the appellee. After a careful review of this record we do not find support for this latter count, and it may be here eliminated from consideration. The material averments of count A were that while the plaintiff was in the act of crossing the railroad at the public road crossing in the town of Goodwater, in a buggy drawn by a mule, and while the mule was upon the track the servants of defendant, acting within the scope of their employment, ran or backed an engine over the track which the mule was in the act of crossing, in such close proximity to said mule that it became necessary for plaintiff to rein the mule around to prevent the same from being struck by said engine, and as a proximate consequence thereof the plaintiff was thrown from the buggy against the ground, sustaining injuries, etc. At the conclusion of the evidence, the court, upon the request of the defendant in writing, gave the affirmative charge in its behalf. This is the question of prime importance to be treated here.

(1, 2) There was evidence tending to show that as the engine was being backed towards and partly across this public road crossing, in the town of Goodwater, which crossing was in constant use by the public, the whistle on defendant's engine was not blown, nor the bell rung, and this would appear as sufficient (the injury resulting as a proximate consequence thereof) to make out a prima facie case as for simple negligence for submission to the jury.—Code, 1907, §§ 5473-5476; *Weatherly v. N. C. & St. L. Ry.*, 166 Ala. 575, 51 South. 959; *L. & N. R. R. Co. v. Loyd*, 186 Ala. 119, 65 South. 153. "But this negligence, no more than others, does not necessarily make the railroad company liable for all injuries at crossings the result of collisions with its trains. This negligence or failure to comply with the

statutory requirements, like all other negligence, in order to render the railroad company liable, must be actionable, and must proximately contribute to the injury complained of. If the injury complained of is the result of plaintiff's negligence, or if his negligence concurred with the simple negligence of defendant's—of failing to comply with the statute or ordinance, in producing the injury complained of, the plainitff cannot recover. These duties required of railroads at crossings, by statute or ordinance, are no more sacred or binding than are other duties imposed by the common law, which have been announced by the courts and text-writers on the subject, no more sacred or binding on the railroad than are the duties which the common law of this country has enjoined upon the public in crossing railroad tracks, often declared by the courts, among which is the duty to stop, look, and listen before crossing the track."—*Weatherly v. N. C. & St. L. Ry., supra.*

"It is equally clear on principle and authority that this duty must be performed at such time and place with reference to the particular situation in each case as will enable the traveler to accomplish the purpose the law has in view in its imposition upon him. He must stop so near to the track, and his survey by sight and sound must so immediately  *  *  *  preclude the injection of an element of danger from approaching trains into the situation between the time he stopped, looked, and listened and his attempt to proceed across the track."— *Central of Ga. Ry. Co. v. Barnett,* 151 Ala. 407, 44 South. 392.

The duty of one in crossing a track at a public road crossing to stop, look, and listen is commented upon extensively, and many authorities are cited, in the case of *L. & N. R. R. Co. v. Williams,* 172 Ala. 560, 55 South.

[Saxon v. Central of Georgia Railway Company.]

218, and the question needs no extended consideration here.

Doubtless the fact that the plaintiff's evidence showed that while he did stop, look and listen before going upon the track, yet this was some 30 or 35 feet from the track, and at a place where his view was obstructed by embankments and a stock pen, and that, without again exercising such precaution, he drove onto the track, which was down grade from such point, with his mule trotting, influenced the court to give the affirmative charge for defendant upon the theory of contributory negligence, as shown by the authorities above cited. If, however, it be conceded that such facts would ordinarily justify the action of the court in so giving the affirmatice instruction for the defendant, yet we have concluded it was erroneous upon the theory of subsequent negligence, as to which we will make brief comment.

(3) That recovery may be had upon proof showing subsequent negligence, upon a complaint for simple negligence, is well settled.—*L. & N. R. R. Co. v. Abernathy, Infra,* 69 South. 57; *A. G. S. Ry. Co. v. McWhorter,* 156 Ala. 269, 47 South. 84.

(4) There was evidence tending to show the very frequent and constant use of this crossing by the public, and that the engineer in charge of the engine at the time knew of the same and was familiar with the surroundings; that the engineer was standing up in his engine, backing his engine into the crossing at the time plaintiff was injured, and that he was looking at the crossing and saw plaintiff when he (the engineer) was about 50 or 60 feet from the crossing, and plaintiff was about 40 feet therefrom, approaching the crossing with his mule trotting. We take a few excerpts from testimony of the engineer as follows: "When I first saw the mule and buggy and saw Mr. Saxon he was approaching the cross-

ing. He was trotting the mule. I could not say as to what direction Mr. Saxon was looking. * * * I commneced to slow down at once just after I discovered him. * * * I was about 50 feet from the crossing when I commenced to stop. * * * A lady was in the buggy with Mr. Saxon when I first saw him; when the mule wheeled around she was not in the buggy. She had jumped out. As well as I could judge, the mule was about 20 or 30 feet from the outside track when the lady jumped out of the buggy. * * * I could not say how fast the mule was trotting. He was trotting at a pretty lively gait when I first saw him. * * * The time I first saw Mr. Saxon I was going three or four miles an hour. *. * * I think I was noticing Mr. Saxon from the time I first saw him until he got to the place where the mule turned. * * * The time I first saw Mr. Saxon I was going about three or four miles an hour. I never traveled any faster than that after I saw him. * * * I don't suppose I ran over four miles an hour at any time after I started towards the crossing. There was no one ringing the bell. The whistle was not blowing. * * I was looking at the crossing. * * . * I was 50 or 60 feet from the public road crossing when I first undertook to stop, and this was when I first saw Mr. Saxon. I tried to stop then to keep from hitting the buggy in crossing. I believed then he was going on the crossing in front of me. That impressed me that he was going on the track ahead of me. * * * When I saw him he was coming just as fast as I was. He and I were traveling about the same rate of speed. When I saw him coming 60 feet off and saw he was in danger, I didn't take time to do any blowing. I was stopping. To blow the whistle you pull a cord in the cab. I was standing right under it. * * * One of my hands was on the throttle, and the other on the

[Saxon v. Central of Georgia Railway Company.]

brake valve.   *   *   *   You could move the brake valve with one hand and pull the cord with the other.   *   *

*I did not give any kind of warning, ringing the bell or blowing the whistle, coming on that crossing."

Witness Walton, who was in the employ of defendant at the time and was on the engine, testified that when he saw Saxon he gave the engineer the stop signal, and that when he saw him the engine was going about two miles an hour; that he had been running on the local train several years, and he had frequently seen the emergency brakes put on, and that when the engine is running as fast as it was at that time eight feet is about all the distance it will run when the emergency brakes are applied, and that the train only went about that far that day after the emergency brakes were put on.

A discussion of the testimony is unnecessary. Suffice it to say we are of the opinion that the record shows, and these quotations therefrom sufficiently demonstrate, that it was a question for the jury to determine as to whether or not the servants or agents of the defendant were guilty of negligence which caused, or proximately contributed to, the injury, after a discovery by them of plaintiff's dangerous position, both as to whether there was such negligence on the part of the engineer in failing to stop the engine earlier, and also as to his failure to give timely warning by either blowing the whistle or ringing the bell after he saw that plaintiff was in the act of going across the track in front of the engine with his mule trotting at the speed as shown above. There was evidence tending to show that plaintiff exercised all reasonable care and diligence to avoid injury after he discovered his peril, and the above questions were such as should have been submitted to the

jury for their determination with appropriate instruction of the law by the court.

The rules of law governing what is termed "subsequent negligence" are now well settled, and a citation of authority where discussed is all that is necessary.— *Weatherly v. N. C. & St. L. Ry. Co.,* 166 Ala. 575, 51 South. 959; *L. & N. R. R. Co. v. Loyd,* 186 Ala. 119, 65 South. 153.

The affirmative charge, given at the request of defendant, was, we conclude, error to a reversal of the case for the reasons above given.

Other questions presented are not likely to arise upon another trial of the cause, and need not be treated.

For the error indicated the judgment of the court below is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.