(88 South. 133)

**HINES, Director General of Railroads, v. COOPER. (7 Div. 100.)**

(Supreme Court of Alabama. Nov. 25, 1920.)

1. **Railroads** ⊙⟹328(2)—**Driver of automobile required to stop, look, and listen.**

Driver of automobile approaching crossing is required to stop, look, and listen for approaching train before attempting to cross track, and where obstructions interfere with his view of track, it is all the more his duty to stop, look, and listen on reaching point where he can see and hear.

2. **Railroads** ⊙⟹335(5)—**Automobile driver's failure to stop, look, and listen held proximate cause.**

Where automobile driver approached crossing with obstructed view of track, at 4 or 5 miles per hour, and reached track when train traveling 24 or 30 miles an hour was 150 feet distant, his failure to stop, look, and listen for train after having passed obstruction 10 feet from track *held* the proximate cause of collision.

3. **Railroads** ⊙⟹350(32)—**Automobile driver's failure to stop, look, and listen held proximate cause of injury as matter of law.**

Where admitted facts proved that automobile driver could have seen approaching train in time to have stopped before entering upon track by stopping, looking, and listening for train, his failure to so do was a proximate cause of the injury as a matter of law and was not a question for the jury, notwithstanding driver's denial, while testifying, that train could not have been seen until he had entered upon the track.

4. **Railroads** ⊙⟹327(6)—**Whether train is regular or irregular immaterial to issue of automobile driver's failure to stop, look, and listen.**

In action for damage to automobile struck by train at crossing, defended on the ground that automobile driver *did not stop, look, and listen* for approaching train before entering on track, testimony as to whether the train was a regular or an irregular train *held* immaterial; the driver's duty to stop, look, and listen being the same regardless of the character of the train.

Appeal from Circuit Court, Etowah County; W. J. Martin, Judge.

Action by J. C. Cooper against Walker D. Hines, as Director General operating the Nashville, Chattanooga & St. Louis Railway. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under section 6, Acts 1911, p. 449. Reversed and remanded.

J. C. Cooper, appellee, brought suit to recover damages to an automobile which was wrecked and otherwise damaged by a Nashville, Chattanooga & St. Louis Railway train at a public street crossing in the town of Attalla. The trial resulted in a verdict for the plaintiff in the sum of $500.

The counts of the complaint numbered 1, 4, 5, 6, and 7, upon which the case was submitted to the jury, charged simple negligence; and as to these counts the defendant pleaded in short by consent: (1) The general issue; and (2) contributory negligence on the part of Homer Cooper, the agent of plaintiff in charge of the automobile at the time, in that he failed to stop, look, and listen before going upon the track. The defendant requested the affirmative charge on each count, and also the general affirmative charge which were refused.

The evidence for the plaintiff tended to show that Homer Cooper, plaintiff's son, who was authorized to drive the car, was driving the Ford car along Fifth avenue in Attalla, Ala., and turned into Line street with the intention of crossing the Nashville, Chattanooga & St. Louis and Louisville & Nashville Railroad tracks about 10 o'clock on a clear Sunday morning, and that while driving on Fifth avenue which ran parallel with the track, he looked up the railroad track towards Gadsden and did not see or hear a train. He was driving the car from Attalla toward Gadsden, and when he turned into Line street it was 40 feet to the nearest rail—the Nashville, Chattanooga & St. Louis Railroad track. The testimony further tends to show that he did not see any train, hear the bell ring or the whistle blow, but as he turned into Line street he slowed down and cut off the power, traveling 4 or 5 miles per hour and looking and listening for the trains. Witness Homer Cooper, continuing, testified that the first time he saw the train was just about the time the front wheels of his car got on the edge of the track, and the engine was about 150 feet from him at the time, and that all but the rear end of his car had gotten across the track when the engine struck it; that he did not stop his car before going upon the track, and the train was running 25 or 30 miles an hour at the time of the collision. The evidence shows there was a fence with vines on top of it running along the railroad, and witness stated that these and the briars obstructed his view, stating, "You could not see, though, until you got right on the track;" that the fence continued up to within 20 feet of Line street, and was about 20 feet from the railroad track; that Line street is a little above the Nashville, Chattanooga & St. Louis track; that the fence was about 3½ feet high, and the vines and briars were 2 or 3 feet high on top of it; that these vines and briars on the fence were all that obstructed his view down the track; and that at the time of the accident there was nothing at this corner but the fence and vines. Witness further stated:

"Standing within a distance of five feet of the first rail of the Nashville, Chattanooga & St. Louis track at Line street crossing, one could not see very far down the track toward

the Attalla station, I guess, about 25 yards. * * * The fence prevented you from seeing it and cut off the view until you got right close to the track. If I was standing within 5 feet of the first rail, I could see the train approaching for 50 yards. There was nothing to prevent me from seeing it but the fence and vines on it. The land about 10 feet to the track was higher than the track. * * * There was nothing obstructing my view in approaching for a distance of 10 feet from the track. I never did stop before going on the track, but slowed down. Just after I looked up the track toward Attalla I saw the train. At that time I was just going on the track, * * * and the moment I looked up the track toward Attalla I saw the train. * * * If I had gone within 3 or 4 feet of the rail, I could have seen a train coming from Attalla at least 50 yards, if I had brought my car to a standstill."

On redirect examination the witness stated:

"I could not possibly have seen that train coming until I got up in about ten feet of the track. * * * I could have seen it before I got there to the rails with the car, I guess, for about 50 yards up the track; that is the first time I could have seen it."

Numerous photographs showing Fifth avenue, Line street, and the crossing were introduced by the respective parties, which are set out in the record. An ordinance of the town of Attalla regulating the speed to 6 miles per hour within the corporate limits was introduced. The defendant's evidence tended to show that the bell was being rung, and that plaintiff's car was approaching at a high rate of speed.

Goodhue & Brindley, of Gadsden, for appellant.

The evidence established the facts that plaintiff's agent was guilty of contributory negligence as a matter of law. 196 Ala. 133, 72 South. 67; 192 Ala. 392, 68 South. 277; 172 Ala. 560, 55 South. 218; 151 Ala. 407, 44 South. 392; 202 Ala. 222, 80 South. 44; 201 Ala. 308, 78 South. 84; 49 N. J. Law, 473, 9 Atl. 680. On these authorities defendant was entitled to a directed verdict on the simple negligence counts.

Disque & Disque, of Gadsden, for appellee.

The question of who was at fault was for the jury, and the court did not err in refusing the affirmative charge. 90 Ala. 185, 8 South. 518, 11 L. R. A. 674; 151 Ala. 355, 43 South. 867; 16 Ala. App. 308, 77 South. 458; 172 Ala. 597, 55 South. 812; 172 Ala. 560, 55 South. 218; 128 Ala. 546, 29 South. 602. The accident happened at a public crossing, and the burden was on the defendant to show that it was not guilty of negligence. Sections 5473–5476, Code 1907; 151 Ala. 355, 43 South. 867; 142 Ala. 238, 37 South. 929, and authorities cited.

GARDNER, J. [1] It is strenuously insisted by counsel for appellant that the court committed error in refusing the general affirmative charge asked by the defendant, upon the theory of contributory negligence on the part of plaintiff's agent in attempting to cross the track of the railway without observing the rule requiring that he should have stopped, looked, and listened. This we consider the question of prime importance on this appeal.

"The principles of law which control cases of this kind are thoroughly well settled by our decisions. One who is about to cross a railroad track 'must stop so near to the track, and his survey by sight and sound must so immediately precede his effort to cross over it, as to preclude the injection of an element of danger from approaching trains into the situation between the time he stopped, looked, and listened and his attempt to proceed across the track. * * *' This language is quoted with approval in L. & N. R. R. Co. v. Calvert, 172 Ala. 597, 55 South. 812, where it is further said that the law imposes 'a continuing duty to see that the way is clear before attempting to cross.' Where obstructions interfere with his view of the track, it is all the more his duty to stop, look, and listen at a point where he can best see and hear, and, seeing or hearing, avoid, an onrushing train. L. & N. R. R. Co. v. Williams, 172 Ala. 500, 55 South. 218, collecting many authorities." L. & N. R. R. Co. v. Turner, 192 Ala. 392, 68 South. 277.

See, also, Bailey v. Sou. Rwy. Co., 196 Ala. 133, 72 South. 67; A. C. L. Ry. Co. v. Jones, 202 Ala. 222, 80 South. 44; Cent. of Ga. Ry. Co. v. Foshee, 125 Ala. 199, 27 South. 1006.

[2] Appellee has sought to avoid the effect of this well-recognized rule by the argument that the evidence was sufficient for a submission to the jury upon the question as to whether or not the nonobservance of the rule was the proximate cause of the injury, and this upon the theory the jury were authorized to infer from the evidence that, had the plaintiff stopped his car, looked and listened, he could not have seen or heard the approach of the onrushing train, and therefore the accident would not have been averted. We do not think this position is well taken. The driver of the car saw the train when it was 150 feet distant, and while his car was upon the track. Considering the undisputed evidence as to the speed of the train and also that of the car as it approached the track, it appears appellant's counsel has demonstrated by mathematical calculation that, had the car been brought to a full stop only a few feet from the track, and sufficient time elapsed to look and listen, the train would have reached the crossing before the car, and the accident avoided.

[3] However, aside from this theory, we

are persuaded there is no material conflict in the evidence to the effect that, had the plaintiff observed the rule and stopped, looked, and listened before going on the track, he could and would have seen the approaching train. Certain excerpts from the testimony of the driver of the car, plaintiff's son, will appear in the statement of the case, which we think show conclusively that had he stopped his car and looked in the direction of the train, he would have seen the same. True, the witness did in a very general way deny that "one could not see until he got right on the track," but, when he testified as to the actual facts, he admitted there was nothing to obstruct his view for a distance of 10 feet from the track, which at this point was straight for one quarter of a mile, and on redirect examination stated that he could have seen it before he reached the rails with the car "for about 50 yards up the track." Indeed, the photographs, as well as all the evidence of actual facts offered by plaintiff, support this view. It is without dispute that he did not stop the car. The following from Peters v. Southern Rwy. Co., 135 Ala. 533, 33 South. 332, is applicable in this connection:

"When facts are admitted which conclusively establish another fact, the mere denial by a witness of the existence of the fact so established does not and should not create that material conflict in evidence which would require a submission of the issue to the jury."

See, also, Richards v. Sloss-S. S. & I., 146 Ala. 254, 41 South. 288.

There is nothing in the case,—and it is not so insisted by counsel,—that tends at all to support any theory of subsequent negligence. We have examined the evidence with great care, and are persuaded that the plea of contributory negligence interposed by the defendant was sustained without material conflict in the evidence, and upon this theory the defendant was entitled to the affirmative charge.

[4] We see no necessity for a consideration of other questions, but will note in passing that, in our opinion, the objection to the question of plaintiff's witness as to whether or not the train that passed was a regular or irregular one should have been sustained. The duty on the part of the plaintiff to stop, look and listen was the same regardless of the character of the train, and the evidence was therefore irrelevant to any issue presented. As to whether the testimony was so prejudicial as to cause a reversal need not be determined.

The judgment is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.