(119 So. 654)

CENTRAL OF GEORGIA RY. CO. et al. v. GRAHAM. (6 Div. 951.)

Supreme Court of Alabama. Dec. 20, 1928.

Rehearing Denied Jan. 24, 1929.

Ritter, Wynn & Carmichael, of Birmingham, for appellee.

Altman, Taylor & Koenig, of Birmingham, for appellee.

See, also, 217 Ala. 677, 117 So. 286.

Nesbit & Sadler, of Birmingham, for appellant.

FOSTER, J. This case was tried on count B, charging wantonness. Appellant complains that it was due the affirmative charge. The evidence tended to show that the accident occurred about 12:15 p. m., Sunday, at a public crossing in Irondale, a populous location; that at this point several tracks extend through the town, dividing the business and residential sections; that the engineer and firemen in charge of the train were familiar with the conditions; that at this time of day on Sunday much traffic crossed the tracks, well known to the trainmen; that the engineer could not see on the opposite side of the tracks objects in approach to the crossing; that the fireman was not keeping a lookout, but was shutting off steam heat from the cars; that the engineer had not told him to do so; that he got off his seat as they were then approaching Birmingham, cutting off steam heat so the coaches could cool down, according to "instructions they give us"; that the engineer was keeping a lookout, but did not discover the peril of plaintiff till too late; that the train was running at 20 to 30

626

miles per hour; that plaintiff had clear view of the track at the crossing, and looked for trains; that to the east, toward the approach of appellant's train, some cars, a large sign, and houses and a stack of cross-ties obstructed her view; that she saw a train on another track, which was approaching from another direction, and which attracted her attention, and did not realize that a train of appellant was on the track coming from that direction; that it did not blow any whistle, nor ring any bell at all until the car she was driving was hit. The witnesses testified with reference to a map and pictures, pointing out the location of the various objects and views of the situation. The drawing or map and pictures are not before this court, though introduced in evidence.

▮▮ Appellant contends that the affirmative charge should have been given, because the evidence of appellee shows that she looked in the direction of the approach of the train, and that all the evidence shows that the approach of the train could have been certainly seen and heard by a person in her position, and, therefore, that, as a matter of legal conclusion she did see it, though she swears she did not, and therefore the failure to give signals of approach, serving only as notice to her, were not the proximate cause of her injury, but her own conduct produced it, and that alone. We agree that, if she saw the approach of the train in time to avoid the accident, she cannot predicate recovery on failure to give the signals. Ala. Power Co. v. Bradley, 18 Ala. App. 533, 93 So. 73. We also agree that, if the evidence shows as a legal conclusion that she could certainly have seen the train when she looked, she is chargeable with having seen it. Peters v. So. Rwy. Co., 135 Ala. 533, 33 So. 332; So. Ry. Co. v. Irvin, 191 Ala. 622, 68 So. 139. But that she could possibly have seen the train was not sufficient to warrant the court in holding that she did in fact see it, when she testifies she did not. Cent. of Ga. Rwy. Co. v. Chambers, 194 Ala. 152, 69 So. 518. As stated above, the map and pictures referred to by the witnesses are not before us. We cannot interpret the testimony of the witnesses with certainty without them. They may have shown that plaintiff could not see the train, as she says she did not. Before we could hold with appellant on that subject, we should have this data. Godfrey v. Vinson, 215 Ala. 166, 110 So. 13; Fayet v. St. L. & S. F. R. Co., 203 Ala. 3, 81 So. 671; Bates v. L. &. N. R. R. Co., 21 Ala. App. 176, 106 So. 394.

The foregoing considerations dispose of the only argument made by appellant in its contention for the affirmative charge.

▮ Appellant insists there was error in refusing the following charge: "If you believe the evidence, you cannot find for plaintiff on account of any failure of the fireman to keep a lookout as the train approached the crossing on the occasion complained of." This charge was properly refused. "At a populous public crossing in a city or thickly settled community where persons are known to be likely or probably crossing the track, it is the duty of the persons operating and running the train to be on a lookout for persons when approaching the crossing." Davis v. Smitherman, 209 Ala. 244, 96 So. 208. "The duty [to keep a lookout] arises when the circumstances exist which call for its exercise * * * and when they are known to those operating the train." Duncan v. St. L. & S. F. R. Co., 152 Ala. 118, 44 So. 418; Ill. Cent. R. R. Co. v. Martin, 213 Ala. 617, 105 So. 805; L. & N. R. R. Co. v. Rush, 22 Ala. App. 195, 114 So. 21.

The Supreme Court of Arkansas considered this question in the case of St. L. & S. F. R. Co. v. Denty, 63 Ark. 177, 37 S. W. 719. The question there was the effect of running a train at a speed of 30 miles an hour over a public crossing in a town, without a proper lookout on the fireman's side. It is true that a statute required a proper lookout. While our statute does not require a lookout, we have shown that a duty may arise to do so. When such duty arises, it is immaterial whether a statute requires it or not. In that case the fireman was not keeping a lookout. The injured party was on the side next to the fireman, who was putting coal in the engine. It was held to be the duty of the trainmen to see that either the fireman or some other employee should have kept a lookout for persons about to approach from the fireman's side, and in effect, as no one else was keeping such lookout, the duty was on the fireman.

It will be noticed that in the foregoing case, as in the instant case, the crossing was in town, with frequent passing, where obstructions should be anticipated, and a lookout kept. But in other locations, at a crossing in a country district, of infrequent passing, the duty to keep a lookout is not so great, and the fireman is justified in performing other duties in the ordinary course, and, when so engaged, there is no duty on him to keep a lookout. Brammer v. Norfolk & W. R. Co., 104 Va. 50, 51 S. E. 211.

▮▮ It was therefore a question for the jury whether such conditions existed which made it the duty of the trainmen to keep a lookout on both sides of the track at the point in question, and, if the engineer could not see persons approaching the crossing, whether the fireman or some other trainman should have kept a lookout. It therefore cannot be said as a matter of law that the failure of the fireman to keep a lookout was not a breach of this duty. The court cannot as a matter of law conclude that the duties of the fireman required him at that point to cut off the steam heat from the coaches, if the jury find that at that time and place there should have been a lookout on his side, and that there was no other available for that purpose but he, and that he had knowledge of

the conditions requiring the lookout, and that there was no other available for that purpose. We conclude that the charge under consideration was not erroneously refused on the facts of this case.

It is next insisted that the court erred in charging the jury that the burden was on defendant to show a compliance with section 9952 of the Code. Without doubt such would have been error, in view of the fact that the only count was a wanton count. Lambert v. So. Ry. Co., 214 Ala. 438, 108 So. 255; Snider v. A. G. S. R. R. Co., 210 Ala. 119, 97 So. 209. So that the only inquiry as to that contention is whether the court did in fact so charge the jury. The court read to the jury sections 9952 and 9955. The latter section contains a statement that the burden of proof is on the railroad to show compliance with section 9952 in a suit for damages, etc. The court immediately charged the jury that the mere failure to comply with the statute would not amount to wanton conduct. The reading of the sections was preceded by a statement that the burden is upon plaintiff to prove to the reasonable satisfaction of the jury all the material allegations of count B.

The complaint did not set out in detail the conditions which it was claimed constituted the wantonness charged. This was, of course, not necessary. The complaint in general terms sufficiently charged a wanton injury. The court in its general charge instructed the jury that the burden was on plaintiff to prove the material allegations of the complaint. This involved, of course, the wantonness claimed, and, if that were all, it would be sufficient. But the court did not in that connection instruct the jury as to the elements of wantonness, the burden to prove which was on plaintiff. He then proceeded to read section 9952, which embraced certain requirements as to signals while moving within a village, town, or city. This was all right, if he had stopped there. But then he read section 9955, which, as stated above, places the burden on defendant as to such signals. The burden not being on defendant as to such signals when the complaint contained only a wanton count, the effect was to give an erroneous charge as to the burden respecting the signals. The court did not explain to the jury that the burden mentioned in that section had no application in this form of action. It left the charge as a whole to mean that, while the burden was on plaintiff to prove wantonness causing the injury, and while the lack of signals was an element of such wantonness, the burden as to the signals was on defendant. The law which he read the jury makes that statement, and the court did not qualify or explain that it had no application. We cannot say that it merely had a misleading tendency, as contended for. It was an erroneous statement of the law as applied to this case.

Whether signals were given was a sharp and material issue, and the evidence was conflicting. A proper instruction as to the burden on such issue was therefore of great importance.

Rule 4 of the circuit court of Jefferson county is not properly before us, and cannot be considered in passing on this charge. Jefferson County Burial Soc. v. Scott, ante, p. 354, 118 So. 644.

Exception was taken to the reading of section 9955 to the extent that it misstates the burden of proof as applied to this case.

We hold the court committed error to reversal in this respect.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.