(128 So. 894)

## SOUTHERN RY. CO. v. RANDLE.
### 6 Div. 576.

Supreme Court of Alabama.
May 1, 1930.

Rehearing Denied June 26, 1930.

436

Stokely, Scrivner, Dominick & Smith, of Birmingham, and Perry, Mims & Green, of Bessemer, for appellant.

Mathews & Mathews, of Bessemer, for appellee.

THOMAS, J.

The assignments of error challenge only the action of the trial court in granting appellee's motion for a new trial, and thereby setting aside the verdict of the jury and judgment rendered thereon.

The complaint contained but one count, alleging, among other things, that defendant's train ran "upon, against or struck" plaintiff's truck upon a public crossing, demolishing, etc.; that said damage was a proximate consequence of the wanton conduct of the agent and servants of defendant in charge of the operation and running of said train, acting in the line and scope of their employment, which said wanton conduct consisted in fact that it caused said locomotive engine or train to run upon, or against, or strike, plaintiff's truck on the occasion indicated, proximately causing him to suffer injury and damage claimed.

The motion for a new trial was granted on written charges 9 and 10, given for the defendant, which are as follows:

"9. 'Under the law it is the duty of a person intending to cross a railroad track to stop, look and listen for approaching trains, and this use of the senses must be made within such nearness to the track and under such circumstances as will afford the traveler the knowledge whether or not he may cross the track with reasonable safety from collision with an approaching train, and I charge you that this duty is a continuing one to the extent of excluding the injection of an element of danger in his attempt to cross, between the time he last stopped, looked and listened, if he did so, and the time he entered the zone of danger made by trains entering the crossing.' "

"10. 'One who is about to cross a railroad track must stop, so near to the track, and his survey by sight and sound so immediately precede his effort to cross over it, as to preclude injection of an element of danger from an approaching train into the situation between the time he stopped, looked and listened and his attempt to proceed across the track.' "

The subject of proximate consequence and proximate cause received consideration in Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610.

The respective counsel agree upon substantially the same statement of facts. They are: That the accident occurred on the 10th day of September, 1927, upon a public crossing over defendant's line of railway tracks about 7:20 a. m., at Morgan Station, in said county, by defendant's engine. At the time of the accident plaintiff's truck was being driven by Frank Mooneyhan, an employee of the plaintiff. Morgan Station is a flag station for pas-

senger trains on defendant's line of railway track. This track at or about said point of collision runs in a general eastwardly and westwardly direction, and is straight for a distance of about one-quarter of a mile on each side of said station and the place where the county highway crosses the track, just west of the station. The railway track is down grade all the way from a point about two miles east of Morgan to a point some distance west of said crossing; and about one-quarter of a mile east of the crossing at Morgan defendant's track runs through a cut, and has a curve on it, being to the left for a west-bound train. Immediately south of defendant's railroad track, and on the east side of the "county public road" (that runs in a general southerly and northerly direction as it crosses the track), there is "a roadway" which runs practically parallel with the railroad track and along the southern edge of defendant's right of way, about twenty-five feet south of the railroad track. About three hundred yards east of the county highway is the house in which Mooneyhan (plaintiff's driver) lived at the time of the accident; this house sits back from fifty to seventy-five feet south of the road running along the edge of the railroad right of way. This road stops in front of Mr. Mooneyhan's house; does not extend further in that direction, and leads from Mr. Mooneyhan's house past the station's grounds at Morgan, and makes a sharp turn into said "county highway" right at the crossing and the railroad track. There is no building or structure of any kind at said station— merely a part of the right of way boxed up with timbers and filled in with cinders as a landing place that is slightly higher than said roadway. The public highway is elevated at the point where it crosses the railroad track. Between Mr. Mooneyhan's house and the county highway there was a house occupied by Mrs. Higginbotham; that is also located on the south side of the road leading to Mr. Mooneyhan's house. There were no houses or obstructions of any kind between Mr. Mooneyhan's house and the railroad track in front of his house. The same was true as far as the point where the track entered the cut, east of his house, and beyond the crossing west of his house. There was an unobstructed view of the entire railroad track from the point where that truck emerged from the cut east of the crossing down to the public road crossing, either from Mr. Mooneyhan's house or at any point in the road, leading from his said house to the public crossing.

About four hundred feet north of the railroad track there is a road which runs in a general eastwardly and westwardly direction; to the east this road leads to Genery's Gap, and to the west it extends to Bessemer. There are two buildings between this road and the railroad track on the west side of the "county road" which crosses the track— a store that faces the road leading to Bessemer, and a dwelling situated just north of the right of way. There is another dwelling just north of the road leading to Bessemer and east of said county road, situated four or five hundred feet from the crossing where the accident occurred. These three buildings were within a radius of a quarter of a mile on the north side of the railroad crossing.

On the south side of the crossing, Mr. Mooneyhan's house and that of Mrs. Higginbotham were the only ones in a radius of a quarter of a mile or more of the railroad crossing on the east side of the county highway. On the west side of the county highway, and south of the railroad crossing, there were about fifteen or sixteen houses within a distance of about one-half of a mile from the crossing, the nearest house being about two hundred and fifty feet south of the crossing. The "county road" to the crossing extends for about one-half of a mile south thereof, serving the houses we have indicated.

At the time of the accident, 7:20 a. m., one of defendant's freight trains, consisting of twenty-one loaded cars and four empty cars, was proceeding in a westwardly direction; and the evidence showed that Mr. Frank Mooneyhan, driving the plaintiff's truck, left his home and drove along the road leading from in front of his house, which paralleled defendant's railroad track, until he reached the "county highway," and then turned to his right and started across the public road crossing at Morgan where the truck was struck by the engine. The evidence further showed that defendant's train was running late (about 7:20 a. m.), and the train was scheduled to pass Morgan about 6 o'clock a. m. The train ran about eighteen hundred feet after striking plaintiff's truck. The evidence was in conflict as to the rate of speed—some of the witnesses placing it at forty-five or fifty miles per hour, while others placed the speed at about thirty miles per hour.

The evidence was in conflict as to the signals given before the collision. The testimony on behalf of plaintiff tended to show that the bell was not being rung as the train approached the crossing, and no whistle signals were given, with the exception of two blasts of the whistle sounded just before the engine struck plaintiff's automobile. On the other hand, evidence for defendant showed that two long and two short blasts of the engine whistle were sounded about a quarter of a mile east of the crossing where the accident occurred, and that the bell on engine was being rung continuously after the engine passed the whistle posts, located about one-quarter of a mile east of the crossing. Similar or like number of whistle signals had been given on approaching a crossing which was one-

half of a mile east of the crossing where the accident occurred.

The evidence further showed that defendant's fireman, as soon as he became aware of the fact that Mr. Mooneyhan, who was driving plaintiff's truck, was not going to stop upon approaching the crossing, but was attempting to cross over the same ahead of defendant's train, indicated that appearance of danger to the engineer operating the train, and he immediately applied the emergency brake, and also sounded two short blasts of the whistle, both being done immediately before the truck was struck by the pilot of the engine. The evidence showed that the plaintiff's truck approached the crossing from the opposite side of the engine from that on which the engineer was sitting, and as a result thereof said engineer did not see the truck until after the collision. The train was proceeding down grade on approach to the crossing, without working steam, and was what is termed "coasting."

The plaintiff's evidence tended to show that the crossing where the accident occurred was a very populous crossing, used or necessary for all persons who lived along said county highway south of the crossing in Morgan who used that thoroughfare in going to and from their work, most of whom were employed in Bessemer; that on school days this crossing was used by children going to school, the schoolhouse being located on the highway which paralleled the railroad track on the north side thereof, and at a point about one-quarter of a mile from the crossing. However, as to this, the undisputed testimony showed that school was not in session on the day the accident occurred. And the evidence as to the use of the crossing is not sufficient to put the engineer on notice that some one would probably be on the crossing, and it is not shown that he did not do all that could be required, after discovering the peril, to avert the collision. He had the right, in the first instance, to assume that the driver would do his duty in the premises, as to attempting to cross.

It is established by our decisions that one who is about to cross a railroad track must stop so near to the track, and his survey by sight and sound must so immediately precede his effort to cross over it, as to preclude the injection of an element of danger from approaching trains into the situation between the time he stopped, looked, and listened and his attempt to proceed across the track. The law thus imposes a continuing duty to see that the way is clear before attempting to cross. Hines v. Cooper, 205 Ala. 70, 88 So. 133; Central of Georgia Railway Company v. Foshee, 125 Ala. 199, 27 So. 1006; In Cunningham Hardware Co. v. Louisville & N. R. Co., 209 Ala. 327, 333, 96 So. 358, 364, it is said of "what is such reasonable precaution," as follows:

"What is such reasonable precaution was dealt with in Southern Ry. Co. v. Irvin, 191 Ala. 622, 68 So. 139, where, adverting to the rule of Central of Ga. Ry. Co. v. Hyatt, 151 Ala. 355, 43 So. 867, it is said:

" 'It is the duty of the person intending to cross a railway to stop, look, and listen for approaching trains; and this use of the senses must be made within such nearness to the track, and under such circumstances as will afford the highly important information to the traveler and operate as the precaution the most ordinary prudence, in such circumstances, suggests; and the duty, unless excused as indicated, is continuing at least to the extent of excluding the injection of an element of danger into the situation between the time he last stopped, looked, and listened and *the time he enters the zone of danger a moving train* would create.' (Italics supplied.)

"As to the continuing duty to see that the way is clear, note L. & N. R. Co. v. Calvert, 172 Ala. 597, 55 So. 812; L. & N. R. Co. v. Turner, 192 Ala. 392, 68 So. 277."

We should further observe that the giving of a charge with misleading tendency is not reversible error; the opposing party's remedy being to ask for an explanatory charge. Ogburn-Griffin Grocery Co. v. Orient Insurance Co., 188 Ala. 218, 66 So. 434; A. G. S. R. R. Co. v. Smith, 178 Ala. 613, 59 So. 464; Allen v. Birmingham Southern R. R. Co., 210 Ala. 41, 97 So. 93.

In the instant case and its issues of pleading the defense of contributory negligence was eliminated; yet its evidence presented reasonable inferences of initial contributory negligence without appropriate pleading to present that issue of fact to the jury. Did the giving of charges 9 and 10 present error? Scott v. L. & N. R. Co., 217 Ala. 255, 258, 115 So. 171; Allen v. Birmingham Southern R. Co., supra. It is not necessary to cite authorities to the effect that contributory negligence is no defense to a count charging wantonness under such pleading, and charges on that issue should have been refused. Southern Ry. Co. v. Fricks, 196 Ala. 61, 71 So. 701; A. G. S. R. Co. v. Russey, 190 Ala. 239, 67 So. 445; A. G. S. R. Co. v. McFarlin, 174 Ala. 637, 56 So. 989. The charges correctly stated the law without predicating a verdict for defendant thereon under the facts hypothesized. In Scott's Case, supra, there was a proper effort to eliminate such defense to a wanton count.

In this state of the case it is necessary that we consider the evidence as to whether the defendant was entitled to the requested general affirmative charge on the whole case. If so, there was no reversible error in giving charges 9 and 10 for the defendant, such giving being without injury. Lambert v. Southern R. Co., 214 Ala. 438, 108 So. 255; Beavers v. Southern Ry. Co., 212 Ala. 600, 103 So. 887.

The rule as to wantonness stated in L. & N. R. Co. v. Heidtmueller, 206 Ala. 29, 89 So. 191, 192, is:

"* * * that trainmen will be guilty of wantonness for running their trains at a great rate of speed without lookout, signal or warning at points densely populated, and where people constantly, frequently, and with regularity pass on or over the track, notwithstanding those who pass on or along same may be trespassers, and this rule applies to rural communities, as well as cities, towns, or villages. Whitehead v. St. Louis R. R. Co., 179 Ala. 314, 60 So. 930; Haley v. K. C. R. R. Co., 113 Ala. 640, 21 So. 357. Nor do we think that this rule is opposed by the case of South. R. R. Co. v. Stewart, 179 Ala. 304, 60 So. 927, notwithstanding the expression that the use must not only be frequent, and by a large number of people, 'and must coexist with the proximity of a populous city or village,' which said quoted expression was not decisive of the case, and it is not altogether accurate. Density, however, of the population alone will not suffice, as there must also be a use of the roadbed by the public in such large numbers and with such frequency and regularity that the trainmen will be held to a knowledge of the probable consequences for the noncompliance with the aforesaid precautions. Highland Ave. R. R. v. Robbins, 124 Ala. 113, 27 So. 422, 82 Am. St. Rep. 153. * * *

"While we treat this case upon the assumption that this child was killed by train No. 2, and while using its track as a walk or passageway, we do not wish to be understood to hold that the evidence is sufficient to reasonably establish the fact that the child was killed while using the track in the ordinary way, on which the plaintiff relies to establish such a general and customary use as to charge this defendant with wantonness on the part of its agents or servants. Southern R. R. Co. v. Stewart, supra, and cases therein cited."

And in Lambert v. Southern R. R. Co., 214 Ala. 438, 108 So. 255, 256, it is announced:

"It may be conceded, however, that if the intestate was killed at a populous crossing, the only constituent of wantonness was the rate of speed the train was going, as the proof shows that the engineer was keeping a lookout and constantly blew the whistle. The rate of speed alone does not constitute wantonness. Northern R. R. v. McGough, 96 So. 569, 209 Ala. 435. Moreover, there was no proof that the engineer was conscious of conditions existing at this point and at that time of day. He may have never passed there before at that hour, and the proof shows that this was an extra or special train. L. & N. R. R. v. Heidtmueller, 89 So. 191, 206 Ala. 30."

■ That is to say, to constitute wantonness in the operation of a train over a public crossing, the rate of speed alone of said train, without a knowledge of circumstances or facts presupposing the consciousness and recklessness to consequences, is not sufficient; there must be proof that the person driving the same was conscious of existing conditions raising the inferences of wantonness, of the time and place at or near and entering into the act of collision and injury. Ala. Power Co. v. Baley, 220 Ala. 540, 126 So. 847.

When charges 9 and 10, given for defendant, are referred to the evidence, they contain a correct statement of the law as to simple negligence without calling for a verdict for defendant on the facts hypothesized. The charges were undoubtedly misleading as to the one count for wantonness. This could have been corrected by an explanatory charge, if requested by the plaintiff; as was sought to be done in Scott v. L. & N. R. Co., 217 Ala. 255, 115 So. 171. This was not requested in the instant case.

Failing in such request, should the plaintiff be allowed to complain of the action of the trial court in stating a general proposition of law correctly that was not applicable to and misleading as to defense to a wanton count? Ogburn-Griffin Groc. Co. v. Orient Ins. Co., 188 Ala. 218, 66 So. 434; A. G. S. R. Co. v. Smith, supra. See, also, Allen v. Birmingham So. R. Co., 210 Ala. 41, 44, 97 So. 93, 95, wherein it is said:

"These numerous charges on that subject unduly brought before the jury the contributory negligence of the plaintiff; they were calculated to mislead the jury as to whether his contributory negligence was a defense to the only count, which was a wanton one, in the complaint, and we are under these circumstances constrained to hold the court erred in giving them."

The action there was, possibly, predicated upon the repeated and great number (17) of such charges "calculated to mislead the jury as to whether contributory negligence was a defense to the only count."

■ Be this as it may, does a careful examination of the evidence show that defendant's request for the general affirmative instruction should have been given? The evidence fails to show defendant's servants in charge on the occasion were guilty of any wanton conduct in the operation of the engine. It is true there was conflict as to the giving of signals in approaching the crossing—that of plaintiff, that no signals were sounded other than two short blasts of the whistle immediately before the collision; that of defendant, that the usual signal and necessary whistle and bells were sounded. The fact that these signals were by whistle and bell was shown by witnesses Cooper, Lutz, and Veach, the members of the instant train crew, and by Cole, Blackerby, and Higginbotham, witnesses not in the employ of the defendant railway company. If, however, there was an absence of the required signals, without more,

this would have amounted to only simple negligence.

What then of the rate of speed at which the engine approached the point of collision, and that shown of the distance the train proceeded to the stop after that collision? Roy said the train was "running fast," without defining what he considered "fast." Hedrick testified forty or fifty miles per hour, and Veach, Cooper, and Lutz fixed the rate at thirty miles per hour. Was this alone, without a consciousness from knowledge of existing conditions and circumstances, sufficient to fix wantonness of the manner of approach to the crossing in question? Lambert v. Southern Ry. Co., 214 Ala. 438, 108 So. 255. The answer to this inquiry is dependent upon the further inquiry under the evidence, whether there was a reasonable tendency to show that engineer Lutz of the defendant, and in charge of the operation of its train on this occasion, had *passed over that crossing at or about the time of day when the collision occurred?* This may be inferred from the fact that as an engineer he had passed that way at various times for years. Ala. Power Co. v. Baley, 220 Ala. 540, 126 So. 847.

There is a failure to show that defendant's servant in charge failed to use all reasonable means to warn the approaching driver of his danger, after defendant's said servant discovered his peril, or that there was failure on the part of such servant to stop the train after such discovery, if that could have been done in time to avoid the collision. We have indicated above that the crossing and its use were not sufficient to put the engineer on notice of its probable use and danger at the time. The affirmative charge requested by defendant should have been given.

The judgment granting a new trial is reversed, and the original judgment of the circuit court for defendant is reinstated.

Reversed and rendered.

All the Justices concur.