160 So.2d 628

**SOUTHERN RAILWAY COMPANY et al.**

**v.**

**Wallace CARTER, Adm'r.**

**8 Div. 105.**

Supreme Court of Alabama.

Sept. 26, 1963.

Rehearing Denied Feb. 6, 1964.

Smith, Johnston & Walker, Huntsville, for appellee.

PER CURIAM.

Bell, Morring, Richardson & Cleary, Huntsville, for appellants.

The appellee recovered judgment in the circuit court of Madison County against appellants for $31,000.00 on count one of the complaint. Judgment was entered following a jury verdict.

Count one charged the defendants with negligence in the operation of a train and that such negligence proximately caused the death of appellee's intestate when the engine of defendant corporation, in charge of the defendant Peters, who was the engineer, at a public crossing in a rural area, came in contact with an automobile driven by the plaintiff, Wallace Carter, in which the intestate was a passenger.

Sixteen fact and expert witnesses were examined in the trial of the case, covering 157 pages of transcript paper, while 65 enlarged photographs, two aerial photographs, and a larger topographical drawing were introduced and admitted in evidence for consideration of the jury. We have read the text of all the testimony and observed the pictorial evidence in aid of the testimony.

While a considerable portion of the testimony is in dispute, some portions were not contested. A fair statement of the essential facts and the evidence adduced at the trial, pertinent to the issues argued in the parties' briefs on file, is as follows:

The plaintiff, Wallace Carter, with three of his children riding with him in an automobile on a clear day, Carter doing the driving, turned north off the main paved highway between Gurley and Huntsville, which runs east and west parallel with the tracks of the defendant corporation. This road, running north, intersected the railroad tracks of defendant corporation and was in public use at the time, lightly traveled, so that the intersection was a public crossing within the purview of the laws of Alabama. The crossing was in a rural area about one mile west of the community of Gurley.

When the driver's seat of the automobile was about even with an old fence that had an opening 30 or 31 feet from the tracks of the defendant, Mr. Carter stopped the car and looked and listened for the approach of a train, but not hearing one, proceeded in low gear toward the crossing with which he was familiar.

The tracks at the crossing were moderately elevated above the point where Mr. Carter stopped. The immediate approach on the south side of the tracks was made of a bituminous substance while the remainder of the road between the highway and the crossing was covered with rocks or gravel.

Mr. Carter testified that as he approached the crossing before, at the time, and after stopping, he did not hear any warning signals or noise, and that when he was near the rails, he looked to his left (west) for a train. Immediately west of the crossing were two rocks, forming a rock cut, that obstructed his view to his left.

Having good ears and eyes, but not hearing nor seeing any train approaching from the west, and not having seen or heard one from the east when he stopped, he proceeded onto the crossing; as the front wheels of his automobile went just over the south rail of the track, one of his children remarked that a train was approaching from the east or words to that effect. Seeing the train, he threw his car into reverse gear, but was unable to extricate his car from its perilous position in time to avoid the train.

The impact of the left sector of the front engine (the train was being propelled by two diesel engines working in unison) struck the front right sector of the automobile, whereby proximately from the impact two of plaintiff's small children, riding in the front seat, were killed.

It further appears from the evidence that the fireman of the train at the time of the impact and a short while before was making a routine inspection of the second diesel engine.

Where the plaintiff stopped to make a visual survey of the railroad track to his right and to listen for a train, there were some grass and weeds that partially obscured his view of the track. He testified he could see a "piece", but not far up the track. As the road approached the crossing, this growth receded in height permitting a better view of the track toward the east.

It further appears from the evidence that a civil engineer, with his transit in the center of the track looking east, the direction from which the train came, could see in a direct line down the track for a distance of approximately 600 feet, but if the transit had been set nearer the south rail of the railroad the direct line would have left the track a short distance further east.

He also testified that a whistle board was located 694 feet east of the crossing.

At the end of this direct line, where it left the track, the railroad curved in a northeasterly direction. As we view the evidence, the crossing was on a very slight curve but not on a pronounced arc of the curve looking east.

The defendant, C. C. Peters, the locomotive engineer, testified, in answer to interrogatories that were propounded to him and the answers introduced by the plaintiff, that as the train approached the crossing he neither rang the bell nor blew the whistle, nor gave any warning signal, although he knew the crossing was there. He did not specifically say that he knew about a whistle board 694 feet east of the crossing, but he said there were several whistle boards along the route.

He further testified in his answers that while approaching the crossing he was at all times looking straight ahead, observing the track for obstructions but saw none, and that he did not see plaintiff's automobile near or on the track. His view of the crossing was cut off about 150 or 200 yards before reaching it. He was on the right side of the engine. When he was put on the stand by his attorney to testify, he said that he could see the crossing for a distance of 1000 to 1500 feet before reaching it.

In his depositions, the engineer, Mr. Peters, testified that when within 2000 feet of the crossing, in his judgment, the speed of the train was 35 to 40 miles per hour; within 1000 feet, 40 to 45 miles per hour; and 500 feet between 45 and 50 miles per hour. On oral examination he testified the speed was 50 miles per hour when the collision occurred.

A witness for plaintiff testified that he was traveling west on the highway parallel with the tracks and that, in his judgment, his automobile was running at a speed of 55 to 60 miles per hour and that the train passed him.

Defendants filed a plea as follows:

"Come now the defendants and for answer to plaintiff's complaint and to each and every count thereof, separately and severally, plead the general issue in short with consent of the plaintiff to put in evidence any matter in defense of this action which would be admissible if well pleaded, to have effect as if so pleaded."

The above plea included a plea that the plaintiff, Wallace Carter, was guilty of negligence that proximately in some degree contributed to the death of his child and intestate.

This court held in the case of Peoples v. Seamon, 249 Ala. 284, 31 So.2d 88(4), as follows:

"We cannot adhere to the theory that a father by electing to be administrator, or causing another to be administrator, and suing as such, rather than as the parent under section 119, supra, his contributory negligence is no defense, whereas it would be a defense in a suit by the parent personally, when the damages recoverable by such administrator would belong to such parent solely to the same extent as if the suit were by him personally."

Appellants, in their briefs, contend that the trial court erred in not giving their written requests for the affirmative charge as to each defendant. This failure was also raised in the motion for a new trial and the merit of that ground is likewise argued in the briefs.

In their briefs appellants contend and argue that the plaintiff, Wallace Carter, was guilty of negligence which, as a matter of law, proximately contributed to the death of his minor child and for whose death damages were claimed under the Homicide Statute, Title 7, Section 123, Code of Alabama, 1940, and awarded.

We have held in numerous cases that contributory negligence is a question for the court only when all reasonable men

must draw the same conclusion, and for the jury when reasonable minds may fairly differ. Mackintosh Co. v. Wells, 218 Ala. 260, 118 So. 276. See also Alabama Digest, Vol. 15, Negligence, ☞136(9).

Well-established principles of law touching the duty of a person in crossing a railroad track at a public crossing appear in the decisions of this court as follows:

■ Railroad track itself is a warning of danger. Louisville & Nashville R. Co. v. Bailey, 245 Ala. 178, 16 So.2d 167.

■ If a traveler *saw the approach* of a train in time to avoid an accident, he cannot predicate recovery on failure to give warning signals. Central of Georgia R. Co. et al. v. Graham, 218 Ala. 624, 119 So. 654 (1). (Emphasis supplied.)

■ It is established by our decisions that one who is about to cross a railroad track must stop so near the track, and his survey by sight and sound must so immediately precede his effort to cross over it, as to preclude the injection of an element of danger from approaching trains into the situation between the time he stopped, looked and listened and his attempt to proceed across the track. The law imposing a continuing duty to see that the way is clear before attempting to cross. Southern R. Co. v. Randle, 221 Ala. 435, 128 So. 894, and cases cited therein.

It is further said in the case of Southern Railway Co. v. Irvin, 191 Ala. 622, 68 So. 139(1), as follows:

"Unless excused from stopping, looking, and listening by reason of some circumstance that would have rendered the taking of those precautions before going dangerously near to or upon a railway track entirely vain for the purpose the law intends in their exaction (Central of Georgia Ry. Co. v. Hyatt, 151 Ala. 355, 43 South. 867, and others in its line), it is the duty of the person intending to cross a railway to stop, look, and listen for approaching trains; and this use of the senses must be made within such nearness to the track and under such circumstances as will afford the highly important information to the traveler and operate as the precaution the most ordinary prudence, in such circumstances, suggests; and the duty, unless excused as indicated, is continuing at least to the extent of excluding the injection of an element of danger into the situation between the time he last stopped, looked, and listened and the time he enters the zone of danger a moving train would create. Central of Ga. Ry. Co. v. Foshee, 125 Ala. 199, 27 South. 1006; Bason v. [Alabama Great Southern R.] Co., 179 Ala. 299, 60 South. 922; Central of Ga. Ry. Co. v. Barnett, 151 Ala. 407, 44 South. 392."

A person attempting to cross a railroad track on which cars and locomotives are liable to be moving must stop, look in both directions, and listen, before going on the track. Louisville & Nashville R. Co. v. Williams, 172 Ala. 560, 55 So. 218(2).

■ A traveler who, on approaching a railroad crossing, stops so far from it as not to be able to discover the danger from a train then near it, is bound to stop at some point near the crossing where he can discover the peril in proceeding. Saxon v. Central of Georgia R. Company, 192 Ala. 434, 68 So. 313(2).

■ It cannot be affirmed as a matter of law in every case and under all circumstances that there is an absolute duty to stop, look and listen before a traveler may go on a railroad crossing. Cunningham Hardware Co. v. Louisville & N. R. Co., 209 Ala. 327, 96 So. 358(12).

We observed in the case of Louisville & Nashville R. Co. v. Williams, supra, as follows:

"What is, or is not, ordinary care often depends upon the facts of the particular case. The rule, 'stop, look, and listen,' is not arbitrary or invariable as to time and place. It may depend in some measure upon the familiarity of

the one passing with the place of crossing; and he cannot always be said to be guilty of contributory negligence, because he failed to stop, look, or listen at one particular time or place, rather than at another. The common law is not as definite and certain in this respect as some of the statutes touching signals of danger.

"As has been said by the Indiana court which is quoted by Mr. Elliott (E. on Railroads, vol. 3, § 1166a): 'The law does not say how near the track the traveler shall make his observations. There is no arbitrary rule in this respect. What the law requires is that the traveler shall choose, in the vicinity of the crossing, according to environments, a place reasonably calculated to afford full opportunity for seeing and hearing'—and the author adds that he should continue to look and listen, and to vigilantly exercise his faculties, until he has passed the crossing.

"The same author adds, in section 1167 of his work on Railroads, the following: 'Ordinary care often requires that the traveler should stop, look, and listen for moving trains from a place where danger can be discerned and precaution taken to avert it. If, for instance, the noise is so great that an approaching train cannot be heard, and the obstructions are such that it cannot be seen, then the traveler must come to a halt and look and listen. It cannot be said that one who simply looks and listens where he knows, or should know, such acts are fruitless and unavailing, exercises that degree of care which the law requires. While it cannot be justly affirmed, as we believe, as matter of law, that there is a duty to stop in all cases, yet there are cases where the failure to stop must be deemed such a breach of duty as will defeat a recovery by the plaintiff. There are very many cases holding that the surroundings may be such as to impose upon the traveler the duty of stopping, looking,

and listening, and these cases, as we think, assert the true doctrine. Some of the courts, in well-reasoned cases, press the rule further, and hold that the traveler must, in all cases, stop, look, and listen. As we have said, we do not think that it can justly be affirmed, as matter of law, that there is a duty to stop in all cases, but we do think that the duty exists in cases where there is an obstruction to sight or hearing, and that where the surroundings are such that but one conclusion can be reasonably drawn—and that conclusion is that it is negligence to proceed without halting—the court should without hesitation direct a verdict, if no halt is made. In the majority of cases, however, the question is one of fact, or a mixed question of law and fact, rather than a pure question of law.' "

■ Failure of trainmen to ring the bell and blow the whistle on approaching a public crossing as required by Title 48, § 170, Code of Alabama, 1940, is prima facie simple negligence, but is not actionable unless proximately contributing to an injury to a traveler struck by a train at the crossing and where the injury was the result of the traveler's negligence or his negligence concurred with the negligence of the trainmen there could be no recovery. Saxon v. Central of Georgia R. Co., 192 Ala. 434, 68 So. 313(1).

The late and eminent Justice Thomas, in the case of Sloss-Sheffield Steel & Iron Co. v. Willingham, 240 Ala. 294, 199 So. 28 at page 31, speaking for this court with respect to railroad crossing collisions observed as follows:

"The duty rests upon a person approaching or going on a railroad crossing to exercise ordinary care and prudence to discover the approach of trains. Such has been held many times in opinions and judgments of this court. *The facts of no two cases are exactly the same and hence there can be no hard or fast rule as to what*

*constitutes contributory negligence as it is dependent upon facts and surrounding circumstances in various cases."* [Emphasis supplied.]

■ Notwithstanding cases cited by appellant that have different factual situations, we think that under the principle of law affirmed in the case of Cunningham Hardware Co. v. Louisville & N. R. Co., supra, wherein it was said that there is not in every case and under all circumstances an absolute duty to stop, look and listen before a traveler may go on a railroad crossing, it was within the province of the jury in the case at bar to determine issues of fact and their bearing on the defendants' alleged negligent operation of the train and the plaintiff's contributory negligence vel non in failing to stop, look and listen a second time after the alleged first stop.

In making this determination with respect to the contention of the defendants that the plaintiff was guilty of contributory negligence, the jury wisely should have and probably did consider factors as follows: (a) the speed of the train just before and as it rounded the curve on the east side and approached the crossing; (b) the number of feet per second the train was traveling just before and as it rounded the curve thence to the crossing; (c) what point nearest the track at the crossing the plaintiff should have stopped to normally afford a visual range of the approaching train; (d) whether or not from the vantage point so determined the train at the speed it was traveling would have reached such visual range before the plaintiff could have reasonably moved forward toward the track; (e) the distance from the vantage stopping point nearest the track to the point of such visual range; (f) would the train at the speed it was traveling have reached this visual range or point after allowing plaintiff a reasonable time to ascertain if the train was approaching before he moved forward to the crossing; (g) the condition of the roadbed and its bearing upon the movement of the automobile; (h) the care of the plaintiff in the light of his duty to look to the left or west for an approaching train; (i) the care of the plaintiff in the light of his duty to keep a lookout ahead for an approaching vehicle traveling on the same highway; (j) the necessity for the plaintiff to manipulate his automobile while driving it toward the track; (k) the care of defendant in view of the admitted failure of the defendants to give any warning signals on approaching the crossing as required by law; (*l*) the effect of such absence in alerting the plaintiff to danger of the approaching train; (m) the presence of weeds or grass, if any, at the second stopping point that would partially obstruct the visual range of the plaintiff in the direction of the approaching train; (n) whether or not the train, considering its speed, would have intercepted the automobile before it could have cleared the track after stopping at the nearest vantage point; (o) whether or not the failure to give the statutory warning signals proximately contributed to the tragedy.

We think the foregoing factors, along with others not enumerated but in evidence, were properly addressed and left to the jury to determine therefrom if the defendants were guilty of negligence proximately contributing to the impact of the train with the automobile resulting in the death of plaintiff's intestate, and also whether or not the plaintiff was guilty of contributory negligence that would bar recovery. Louisville & N. R. Co. v. Loyd, 186 Ala. 119, 65 So. 153(4); Sloss-Sheffield Steel & Iron Co. v. Willingham, 240 Ala. 294, 199 So. 28, supra.

We are also of the opinion that under the above and other factors not all reasonable men would draw a conclusion that the plaintiff was not excused from making a stop nearer the crossing and would charge him with negligence as a matter of law, thus placing error on the trial court for denying defendants' affirmative charge.

We pretermit any judicial observation on the issue of subsequent negligence raised by the pleadings. Discussion is not necessary under the decision of this court here made.

**226**

■ We are of the opinion that the giving of charge 104 for the plaintiff is a correct statement of law in view of our holding that the affirmative charge for the defendants was correctly denied. The reporter will set out this charge.

■ Likewise for the reason that the contributory negligence vel non of the plaintiff was properly addressed to the jury, charge 17 for the defendants was properly refused. The reporter will set out this charge.

We hold that the judgment of the lower court should be and it is affirmed.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, while serving at the request of the Chief Justice, and was adopted by the court as its opinion.

Affirmed.

LAWSON, GOODWYN, MERRILL and HARWOOD, JJ., concur.

On Application for Rehearing.

LIVINGSTON, Chief Justice.

The application for rehearing contains matters which have already been discussed in the opinion of the court and the application for rehearing is overruled.

Appellants have filed a motion "to strike and set aside the decision rendered in this cause" on the ground that the opinion was prepared by Honorable B. W. Simmons instead of being prepared by a justice of this court. Judge Simmons, a supernumerary circuit judge, is and has been serving with the Supreme Court at the request of the Chief Justice under the provisions of Act No. 41, Acts of Alabama 1961, Vol. II, p. 1895, approved September 15, 1961.

The motion is denied.

Appellants cite Sec. 152 of the Constitution of Alabama of 1901, which requires that the justices of the Supreme Court be elected by the qualified electors of the state; and the Opinion of the Justices, 252 Ala.

543, 41 So.2d 907, which expresses the opinion that constitutional judicial officers may be appointed only in the manner provided in the Constitution. We agree with the two authorities cited, but they are not decisive of the matter before us.

■ A supernumerary circuit judge serving with this court under Act No. 41, supra, or a supernumerary justice serving with this court under Tit. 13, §§ 31, 32 and 33, Code 1940, as amended, is neither a member nor a justice of this court. He does not have a vote on cases or court matters, and opinions prepared by him are submitted to the court and, if approved and adopted by a majority of the justices, they become the opinions of the court.

Because of his experience as a justice or as a circuit judge, a supernumerary justice or a supernumerary judge is qualified to help the court by studying briefs and records and preparing opinions for the consideration of the justices of the court. This is and has been a great help to the court in reducing the backlog of older cases.

The supernumerary justice or judge prepares a proposed opinion and presents it to a majority of the court. This opinion may be accepted, rejected, changed or modified, but the final opinion is that of the court, and the names of at least four concurring justices appear in every such opinion.

The preparation of an opinion is not a simple matter and usually involves days of work, and the supernumerary justice or judge preparing it, or most of it, ought to receive recognition. For that reason, the statement is made at the end of the opinion that it was prepared by him, but the opinion is the opinion of the justices who are shown concurring in the opinion, and therefore the opinion of the court.

■ In view of the fact that Supernumerary Circuit Judge Simmons is neither a member nor a justice of the court, and the opinion prepared by him in this case is the opinion of the court, the motion has been denied.

All the Justices concur.