(137 So. 681.)

### CENTRAL OF GEORGIA RY. CO. v. ODOM.

4 Div. 793.

Court of Appeals of Alabama.

Oct. 27, 1931.

Rehearing Denied Nov. 17, 1931.

Steiner, Crum & Weil, of Montgomery, and Powell, Albritton & Albritton, of Andalusia, for appellant.

Marcus J. Fletcher, of Andalusia, for appellee.

BRICKEN, P. J.

Appellee brought suit against appellant seeking to recover $1,000 for personal injuries and damages to her automobile as a consequence of the negligent operation of one of appellant's trains at a certain public crossing in the city of Andalusia, Ala. The complaint contained one count only alleging simple negligence on the part of defendant.

A diagram in this record indicates that Montgomery street in the city of Andalusia runs approximately east and west and that it is crossed by the Central of Georgia Railroad tracks near Buck Everage's Store, the railroad tracks running approximately north and south.

The undisputed evidence in the record is that Wilder's warehouse is on the west side of the railroad tracks and the north side is Montgomery street, which is referred to in the testimony as the "road." It is 21 feet from the "road" to the warehouse. The building is 80 feet wide and 200 feet along the railroad. Between the warehouse and the road or street is a platform 16 feet long. The warehouse is 18 feet high. The witness Harris, who testified that he measured the distance between the railroad and the warehouse, said it was 18 feet from the nearest track of the railroad to the warehouse, as we interpret his testimony. The only other evidence on that point is the testimony of Curtis Odom, who testified: "I guess the warehouse is 5 or 6 feet from the railroad. I never measured it."

■■ The plaintiff was traveling in an automobile, operated by her son Curtis, at her request, in an easterly direction along Montgomery street as she approached the crossing. An engine and three cars were approaching the crossing from the north going south in a switching operation, when a collision occurred between the plaintiff's automobile and the engine. One defense was contributory negligence on the part of plaintiff's son and agent who was operating the automobile for her at her request. His conduct is best described in his own language taken verbatim from the record: "I was driving the car. I guess I got as close as about 8 or 10 feet to the railroad before I stopped. I am sure I got that close. The warehouse prevented me from seeing the train. I stopped my car at a place where I could not see the train on account of the warehouse. I stopped there just a minute or a little over. I shut off my engine and stayed stopped about a minute. I looked both ways. I did not look in front and behind me. I looked up and down. I did not see down the railroad. There was some lumber there and where I stopped the car; the warehouse kept me from seeing up the track and I stayed stopped about a minute. I guess the warehouse is 5 or 6 feet from the railroad. I have never measured it. I would say it is 5 or 6 feet from the railroad track and I stopped back about 10 feet where I could not see. If I had gone up there in 5 or 6 feet from the track I could have seen up there. I did not go that close. I stopped where the house kept from me from seeing. If I had gone up a little closer where the space between the warehouse and the railroad was clear I could have seen it. I could have seen there. I could have seen clear up the track to the left and could have seen the train. I did not do that. I stopped back down there where I could not see. I am positive about that. I stopped down there where there was a warehouse between me and the railroad track. The warehouse is not about 20 feet from the railroad track. I stopped there at a point where I could not see up the railroad track on account of the warehouse. I do know that if I had gone close to the railroad track I could have looked and seen the train."

There is nothing in the record that conflicts with this statement by plaintiff's son.

Counsel for appellee says in brief that "no decision of this court has stated just how many feet a party must stop his car before approaching a railroad track and just how far he must see down the track before going upon it." While this statement is true in the abstract, the Supreme Court of this state, and this court as well, has reiterated from time to time the rule that he must stop so near to the track, and his survey by sight and sound must so immediately precede his effort to cross over it, as to preclude the injection of an element of danger from approaching trains into the situation between the time he stopped, looked, and listened, and his attempt to proceed across the track. Central of Georgia Ry. Co. v. Barnett, 151 Ala. 407, 44 So. 392. The plaintiff's son testified that the engine "was going very slowly." The engineer says he was going about five

miles per hour. While there is some testimony that there is a curve in the railroad north of the warehouse, and the evidence is in dispute as to whether the automobile ran into the side of the engine striking it about the cylinder or the pilot or the engine struck the automobile, we are of the opinion that a reasonable application of the rule of common sense and safety, to which we have referred, required the giving of the general affirmative charge requested in writing by appellant. Its refusal was error, and for that reason the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.